CHARLES FLOHR AND EMMA FLOHR v. THE TERRITORY OF OKLAHOMA.

(Filed September 3, 1904.)

1. INDICTMENT—Demurrer. A demurrer to an indictment in the following form: "It does not substantially conform to chapter 68, Statutes of Oklahoma, 1893, entitled Procedure Criminal," is too indefinite in its terms and will not be considered upon review, unless the exact defect intended to be reached is pointed out by the brief of counsel who complain of the judgment of the court in overruling the same.

2. SAME—Larceny by Fraud and Stealth. An indictment which in a single count charging the crime of grand larceny alleges that the property was taken by fraud and stealth will not be held

insufficient upon an objection to the introduction of testimony upon the ground that the indictment charges two separate and distinct offenses, 'or that the indictment is uncertain, and fails to charge larceny under the statute, or because the offense is charged to have been committed· in the different ways in which the statute designates the same may be accomplished.

3. SAME—When Sufficient. Where in an indictment for larceny the property is charged to have been taken by fraud and stealth, it is not necessary to set out the fraudulent acts relied upon as constituting the fraud, and in such cases the crime of larceny may be satisfactorily shown by proof that at the time of taking it was taken with the felonious intent to convert it to the taker's own use, and to deprive the owner thereof, regardless of the fact as to whether the taking was accomplished by fraud or by stealth.

4. SAME—Venue. An indictment charging a criminal offense which shows that it was found by a grand jury of a county of this Territory duly impanelled, charged and sworn· to inquire into and true presentment make of all public offenses against the Territory of Oklahoma triable within the county of ........ (naming it), and that the defendant on a day certain (naming it), in said county of ........ (naming it), did then and there, etc., sufficiently charges the venue in the Territory of Oklahoma, and in the county named.

5. LARCENY—EMBEZZLEMENT—Distinction. The distinction between larceny where the taking is fraudulent, and embezzlement, is determined with reference to the time when the intent to wrongfully convert the property to the taker's use, occurs. If the property in the hands of the taker amounted to a bailment, or if the property went into the possession of the taker with knowledge of the owner on account of any fraudulent representation by the taker, and the taker received the same, intending at the time of its reception to convert the same to his own use and deprive the owner thereof, the crime is larceny. If, on the other hand, the taker receives the property as a bailment of the same, or with the knowledge and consent of the owner, intending at the time a compliance with the terms of the bailment, or to conform to the owner's wishes concerning the property in his possession, and afterwards converts the property to his own use and fails to account for the same upon demand, the crime is embezzlement.

6. EVIDENCE—Memory, Refreshing From Memoranda. It is not error, where during the progress of a trial an officer who has taken goods upon a legal process is testifying, to permit such officer to refresh his memory from a copy of his return upon process showing the property taken by himself, which copy has been made by a typewriter in his (the officer's) presence and under his direction. It is not error, where, for the purpose of expediting the business of the court, the court permits a witness to use for

the purpose of refreshing his memory a copy of a legal instrument which has been made under the direction of the court and furnished the witness by the court.

7. SAME—Of Other Stolen Property. Where in the trial of a criminal cause, the defendant was charged with the larceny of numerous items of merchandise, possession of which had been recovered through the service of a writ of replevin and 'the execution of a search warrant, it was not error to permit the officers serving such process to show what property was so recovered, notwithstanding the fact that some of the property so recovered was not enumerated in the indictment or charged to have been stolen.

8. SAME—Cross-Examination—Privileged Subjects. A practicing physician and his wife, prosecuting witnesses in a cause wherein a charge of grand larceny is being tried, may not be compelled upon cross-examination to answer questions touching the marriage relations between them for the purpose of affecting their credibility as witnesses concerning such larceny; nor can such physician rightfully be compelled to answer questions which intimate that he has at some time been guilty of producing an abortion, for the purpose of affecting his credibility as such witness.

9. SAME—Cross-Examination—Limit as to Former Trial. Where a court stenographer has testified to questions propounded to a witness upon a former trial and answers thereto, and for the purpose of answering such questions has been permitted to use his shorthand notes of the testimony at the former trial, and upon cross-examination is asked to read from his shorthand notes all of the testimony given by such witnesses at such former trial, it is not error to sustain objection to such question.

10. INSTRUCTIONS TO JURY. It is not reversible error for the court to refuse an instruction which reads: "And if after retiring to your jury room there remains a reasonable doubt in the minds of any one of the jurors as to the guilt or innocence of the defendant, then the jury cannot convict the defendant," where the court has given in its general instructions a correct instruction touching their duties in case they entertain a reasonable doubt of defendant's guilt, and which instruction given by the court is addressed to the jury as a whole instead of to the individual jurymen as asked for in the instruction refused.

11. SAME—As to Grand and Petit Larceny. Where grand larceny is charged in an indictment, and the court in its instructions to the jury has once plainly and distinctly informed the jury of the distinction between grand and petit larceny, and instructed them that they can convict of the crime of grand larceny only in case they find the value of the property taken to have been more than twenty dollars, and that their verdict should be that of guilty of petit larceny in case they find the value of the property does not exceed twenty dollars, it is not error if such instruction as

to value is not repeated in another instruction given where the elements of the crime are defined.

12. **FRAUD OR STEALTH—Taking by.** Where a statute defines the crime of grand larceny to be the taking of personal property by "fraud or stealth," and an indictment charges the taking of the property by fraud and stealth, it is not error to instruct the jury that before they can find the defendant guilty they must be satisfied beyond a reasonable doubt "that it (the property) was taken either by fraud or stealth, or by fraud and stealth."

13. **REPLEVIN OF STOLEN PROPERTY—Effect of.** Where possession of stolen property is recovered by a writ of replevin, it is not error to instruct the jury as follows: "But the fact that this replevin suit was commenced, and the fact that the defendants or one of them gave a redelivery bond and retained the property, in no wise relieves him or them of criminal responsibility for the larceny of the property." Such instruction does not invade the province of the jury in determining the weight and effect of the testimony.

14. **LARCENY—From Trunk in Possession.** An instruction which advises the jury that the crime of larceny is committed by opening a trunk unauthorizedly and taking therefrom the contents, feloniously intending to appropriate the same to the taker's own use and benefit, where such trunk has been left by the owner in the custody of such person so opening the same, is correct. Such taking would not necessarily constitute the crime of embezzlement.

15. **TRIAL—Presence of Defendants.** Where the record of the trial shows that after a noon adjournment of the court the defendants were present at the convening of the court when the trial was resumed, and during that afternoon hearing in the case the jury were given a ten minutes' recess, during which time the court had under advisement a legal question presented in the case, it is not necessary that the record should show that the defendants were present upon the resumption of the trial after determining such legal objection. They will be presumed to have been present during that afternoon session of the court, unless the record affirmatively shows their absence.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before J. L. Pancoast, Trial Judge.*

A. C. Towne, Temple Houston, H. A. Noah and W. S. Denton, for plaintiffs in error.

P. C. Simons, Attorney General, and Luther Martin, County Attorney, for defendant in error.

Opinion of the court by

GILLETTE, J.: The appellants Charles Flohr and Emma Flohr were indicted at the February, 1903, term of the district court of Woods county, charged with the crime of grand larceny, and at the same term of said court the cause came on for trial, and the defendants were found guilty and sentenced, the said Emma Flohr for one year, and the said Charles Flohr for three years in the penitentiary.

Thirteen grounds of error are assigned by defendants in their motion for a new trial, the overruling of which is complained of in the petition of this court.

The indictment upon which the defendants were tried and convicted is as follows:

"Indictment. Territory of Oklahoma, County of Woods, ss. In the February term of the district court of the sixth judicial district of Oklahoma, begun and held within and for Woods county, in said Territory, at Alva, in the county of Woods, on the 16th day of February, in the year of our Lord one thousand nine hundred and three.

"The grand jurors duly summoned, chosen, impanelled, sworn and charged at the February term aforesaid of said district court within and for the body of Woods county, Oklahoma, to inquire into and true presentment make of all public offenses against the Territory of Oklahoma committed or triable within the county of Woods, in said Territory, in the name of and by the authority of the Territory of Oklahoma, upon their oaths present that Charles Flohr and Emma Flohr on the 26th day of November, A. D., 1902, in the said county of Woods, did then and there unlawfully and feloniously take, steal and carry away by fraud and stealth, and with the unlawful and felonious intent to deprive another thereof, to wit, the owners, C. H. Richards and Luella

Vol. 14—31

W. Richards, the following personal property to wit:" etc.

To this indictment defendants demurred "upon the ground that it did not substantially conform to the requirements of chap. 68, Statutes of Oklahoma, 1893, entitled Procedure Criminal," and the insufficiency of said indictment is challenged in the 6th, 7th and 8th grounds of motion for new trial. In the 6th ground because the indictment does not state the facts constituting the fraud by which the property is alleged to have been taken. In the 7th because the indictment in said cause charges or attempts to charge more than one offense, and the 8th because the indictment does not state facts sufficient to constitute a public offense under the laws of the Territory of Oklahoma.

Exactly what is meant by the defendants by their demurrer above quoted is not easily ascertained. In what respect the indictment was not in substantial conformity with the requirements of the statute governing criminal procedure is not pointed out by the demurrer, and no reference is made to it in the brief of plaintiff in error further than to declare that the demurrer should have been sustained and the defendants discharged.

A pleading so indefinite in terms as this, although overruled by the trial court, and exceptions taken to such ruling, will not be considered upon review where counsel wholly fail to point out or indicate in what manner and wherein the pleading challenged fails to meet the requirements of the statute.

In some cases defects in a pleading are easily discernible; in others a demurrer may be intended, and often is, to reach nice and subtle distinctions, but where such is the

case they should be pointed out in such manner as to advise the court of the exact point relied upon. In this instance there is a total failure to do this, and there being no plainly discernible error, the judgment of the trial court in overruling the demurrer is affirmed.

At the beginning of the trial the defendants objected to the introduction of any evidence upon the grounds, first, that the indictment charges the offense to have been commited in two different ways, to wit, by fraud or stealth; second, that the indictment does not set out the facts constituting the fact by which the property is alleged to have been taken; third, that the indictment does not state, in the body thereof, the venue where the alleged offense was committed; fourth, that the indictment does not charge facts constituting a public offense; fifth, nor does the said indictment charge that the property therein described was taken from the possession of any person, nor with the intent to convert said property to the use and benefit of the taker; and sixth, the opening statement of the prosecuting officer shows a variance between the allegations in the indictment and the statement, and that statement shows a larceny, if any at all, by a bailee, embezzlement. The opening statement of counsel shows that if any offense has been committed at all it is an offense under the following section of the statute, to wit:

"If any person being entrusted with any property as bailee, or with any power of attorney for the sale or transfer thereof, fraudulently converts the same or the proceeds thereof, to his own use, or secretes it or them with a fraudulent intent to convert to his own use, he is guilty of embezzlement, whether he has broken the package or otherwise determined the bailment or not."

These objections being overruled by the trial court, error predicated thereon is preserved in the motion for a new trial, and particularly the sixth, seventh and eighth grounds above quoted.

We will notice these objections in their order.    The first, that the indictment charges the offense to have been committed by fraud or stealth, is an erroneous statement of fact, which was noted by counsel for the Territory at the time, probably the result of inadvertence, but which was not however, corrected of record, and we presume that the notice of record given it by counsel for the Territory at the time was treated as a correction of the statement, because counsel for the defense in their brief treat the objection as reading by "fraud *and* stealth," and we will so consider it.

The indictment charges the crime of larceny of the property set forth, as stated in the objection, by fraud and stealth.    This proposition has often been before the courts. The supreme court of the state of Indiana in *Fahnestock v. The State,* 1 N. E. 372, had this question under consideration and with reference to it say:

"When a statute makes it an offense to do some one or another act, naming them disjunctively, either of which would constitute one and the same offense, and amenable to the same punishment, all the acts may be charged conjunctively in the one count as constituting a single offense."

The supreme court of California, 24 Pac. 106 says: "An indictment for forgery which enumerates each one of the series of acts, either one of which constitute such crime under the penal code, charges but one offense, since under said section they all constitute but a single offense."

In the case of *People v. Gosset,* 29 Pac. 246, the court

says: "An indictment charging that defendant did deal, play, carry on and conduct the game of faro, charges but one offense, pen. code 330, inflicting a penalty on every person who deals, plays or carries on, or who conducts any game of faro."

In the case of the *People v. Leyshon,* 41 Pac. 480, the defendant is shown to have been informed against charged "with having forged the name of Mrs. Maggie Henry and Eliza J. Clark to a certain promissory note, set out in the information, with intent to defraud one A. J. Graham, and to have knowingly, wilfully, feloniously, etc., uttered, passed as true and genuine, the promissory note, with intent to defraud said A. J. Graham," etc. Defendants demurred to the information upon the ground that it charges two offenses, viz: "The crime of forgery committed April 23, 1894, and also the crime of passing a forged note on the 24th day of April, 1894." The demurrer was overruled. In passing upon the objection to this ruling and affirming the same the supreme court of California says:

"Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count; for the reason that, notwithstanding each act may by itself constitute the offense, all of them together do no more. * * * * * The information charged but one offense, and the demurrer was properly overruled."

In 45 Pac. 263, *People v. Gusti,* the court says: "Of course an indictment or information must charge but one offense, and if it charges more than one it is subject to demurrer upon that ground. The question is, Did the information here charge two offenses? We do not think it did.

It is a well settled rule of law that when a statute enunciates a series of acts, either of which separately or all together may constitute the offense, all of such acts may be charged in a single count, for the reason that, notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense."

The supreme court of the United States in *Cranin v. The United States,* 162 U. S. 625, in an opinion covering this general subject by Justice Harlan, after citing *Rex v. Hunt,* 2 Camp, 583 (English); 2 Virginia Cases, 356; 20 Pick. 356; 4 Cush. 74; C. Hallstead, 203, 215; 7 Penn. St. 275, 278; say:

"The statute was directed against certain defined modes of accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor, for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than one thousand dollars. We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to a charge contained in a single count; for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it."

The author of the Amer. Enc. of Pl. and Prac., vol. 10, p. 536, states the following text:

"When a statute enumerates several acts in the alter-

native, the doing of which is subject to the same punishment, all of such acts may be charged cumulatively as one offense."

In the case under consideration the crime of grand larceny is charged, and the acts by which it is charged are charged to have been performed with intent to deprive the owner of the property, which is declared to have been accomplished by fraud and stealth.

The accomplishment of such a purpose by fraud or stealth is larceny under the definition of such crime as given in the Statutes of Oklahoma, and we do not think that because the crime of larceny here charged is alleged to have been accomplished by fraud and stealth in a single count the indictment charges two separate and distinct offenses, or that the indictment was uncertain and failed to charge larceny under the statute, or that the indictment is objectionable because the offense is charged to have been committed in the two different ways in which the statute designates the same may be accomplished.

The second objection is that the indictment does not set out the acts constituting the fraud by which the property is alleged to have been taken. In support of this second proposition counsel for the defendants say: "In all pleadings, both civil and criminal, in charging that an act was fraudulently done, it is not sufficient to say simply that it was fraudulent, but the acts constituting the fraud should be set out." And in support of this statement they cite the case of *Martin v. Territory,* 4 Okla. 105. That was an action charging the crime of grand larceny accomplished by fraud, and the indictment set out the false statements relied upon, and the court in the opinion says: "The form of pleading adopted by the prosecution in this case came

squarely within the provisions of our criminal procedure, and was fully authorized by it."

There can be no question about the correctness of this determination by the court, but the language of the court nowhere in that case goes to the extent of holding that so full a description of the offense is necessary for a good indictment charging the offense of grand larceny.

To the writer of this opinion it has seemed that there was much force in the objection here made, and by reason thereof much consideration has been given to it.

It is with reluctance that a conclusion has been reached that the indictment is good in this respect.

The supreme court of Dakota in the case of the *Territory of Dakota v. Anderson,* 50 N. W. 124, had under consideration a case almost identical with this. In that case "the indictment charged that the defendant at a certain time and place did fraudulently and feloniously steal, take and carry away divers bank bills," etc. This language of the indictment was objected to on the ground that the facts stated in the indictment did not constitute a public offense. The objection was overruled and upon appeal the ruling was affirmed. The provision of the statute under which that indictment was drawn was identical with the statute of this Territory defining larceny, and the act was charged to have been fraudulently done, without setting out the acts constituting the fraud.

The supreme court of California in the case of the *People v. Smallman,* 55 Cal. 185, had before it a cause wherein the defendant was indicted for the crime of larceny. The indictment charged that the defendant did feloniously steal,

take and carry away $2,000, the property of one Wm. Cooper and Margery Cooper, his wife. Evidence was admitted to show that the money was delivered to the defendant by the Coopers for the purpose of investment, which was never done, but instead was converted to defendant's use. In that case the court advised the jury that if the defendants received the money with the intent charged they were guilty, and this ruling of the trial court was approved by the supreme court on appeal.

In the case of *The People v. Smith,* 23 Cal 280, the court held as follows: "When the bailee of property obtains possession of it from the owner with the intent of stealing it, and carries out that intent, he is guilty of larceny, and should be indicted for that crime." The court in the opinion says: "If at the time he hired the horse he intended to steal it, he was properly indicted for grand larceny; and the evidence was therefore admissible without averring the alleged bailment in the indictment."

The case of the *People v. Jersey,* 18 Cal. 338, is to the same effect, and states the same principle laid down in *People v. Smith, supra.*

While the indictment in the last three cases above referred to does not charge that the property was fraudulently taken, or that the crime was consummated by fraud and stealth, yet in each case except the last one the court admitted evidence to show that the taking was fraudulent instead of by stealth; and in the last case the lower court was reversed because of a failure on the part of the trial court to instruct the jury that the intent to steal must have existed at the time of hiring the horse. In the case *of Smith v. The State,* 29 S. W. 785, the supreme court of Texas says:

"As to the objections urged to the indictment, we believe it sufficient to charge a theft of pledged property under the general indictment for theft." The trial court having advised the jury that the intent to appropriate the property to the taker's use and deprive the owner thereof must have existed at the time of the taking in order to justify a conviction.

In this case the taking was of pledged property, and the judgment of conviction was affirmed.

In these last four cases referred to the indictment charged only that the accused "did feloniously steal, take and carry away," while the evidence showed either that the possession of the property was obtained by fraud, or the possession was that of bailee, and if the proof was admissible under such an indictment, which does not mention the acts constituting fraud, why should not the same character of evidence be received in support of an indictment which does charge the taking to have been "by fraud" without going further and setting out such acts?

We are referred to no case or authorities supporting the defendant's contention in this respect, except the case of *Martin v. The Territory, supra,* which, as we have before remarked, does not go to the extent of holding that in an indictment where a fraudulent taking is charged, it is necessary to set out the acts relied upon as constituting the fraud, and we must hold therefore on the strength of the authorities above cited, that it is not necessary, and that the crime of larceny may be satisfactorily shown by proof that at the time of taking the property it was taken with the felonious intent to convert it to the taker's own use, and to deprive the

owner thereof, regardless of the fact as to whether the taking was accomplished by fraud or stealth.

The third objection that the indictment does not state in the body thereof the venue, is not supported by the authorities. The indictment reads:

"The grand jurors duly summoned, chosen, impanelled, sworn and charged at the February term aforesaid of said district court within and for the body of Woods county, Oklahoma Territory, to enquire into and true presentment make of all public offenses against the Territory of Oklahoma committed or triable within the county of Woods in said Territory, in the name of and by the authority of the Territory of Oklahoma, upon their oaths present that Charles Flohr and Emma Flohr on the 26th day of November, A. D., 1902, in the said county of Woods, did then and there unlawfully and feloniously take, steal and carry away, by fraud and stealth, and with the unlawful and felonious intent to deprive another thereof, to wit: The owners, C. H. Richards and Luella W. Richards, the following personal property, to wit:" etc.

The statute provides, section 5076: "The indictment is sufficient if it can be understood therefrom; * * * 4th, that the offense was committed at some place within the jurisdiction of the court."

The indictment shows that it was found by the grand jurors of Woods county, Oklahoma Territory, duly impanelled, sworn and charged to enquire into and true presentment make of all public offenses against the Territory of Oklahoma triable within the county of Woods, and that the defendants on November 26, 1902, in said county of Woods did then and there, etc. It would be impossible to hold that it could not be understood from this language that the grand jury in this indictment charged the offense to have been com-

mitted in Woods county, Oklahoma. See *Anderson v. State,* 4 N. E. 53; *State v. Saltis,* 39 N. W. 157; *State v. Muntz,* 3 Kan. 384; *State v. Walters,* 14 Kan. 375.

The fourth ground of the objection, that the indictment does not charge facts constituting a public offense, is not presented in the brief of counsel for plaintiff in error, except with reference to the subject-matter of said indictment already considered; and the fifth ground, that the property described was not taken from the possession of any person, raises no question that may be considered upon an objection to the introduction of evidence.

It is not necessary that an indictment charging grand larceny should show that the property at the time of the taking was in the possession of any particular person, and such question does not arise in this case under this objection, other than as we have already considered the indictment with reference to the allegation of fraud therein contained.

The sixth ground of objection to the introduction of testimony is not urged by counsel for plaintiff in error in their brief as an objection to the sufficiency of the indictment, but the grounds thereof are urged under the motion for a new trial, and are in substance that under the facts of the case the crime charged is that of embezzlement, instead of larceny.

Under the statutes of this Territory as we have heretofore noted, larceny is defined to be "the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof;" while embezzlement is defined as "the fraudulent appropriation of property by a person to whom it has been entrusted."

The distinction between the two crimes as defined by the statute above quoted is plain. In larceny the criminal intent must exist at the time of taking the property, and it must be taken, when taken, with intent to appropriate it to the taker's own use, and to deprive another thereof. It may be taken by stealth with such intent, or it may be taken with the owner's knowledge through fraudulent practice, by which the owner was induced to give up possession, without parting with the title or right to the property, and if the taker receives it under such circumstances intending to convert it to his own use and thereby deprive the owner thereof, the crime is larceny.

If on the other hand the property is received by the taker as a bailment, or the right of possession is entrusted to him by the owner with intent to confer upon the taker the present use and possession of the property to be afterwards redelivered to the owner, and the taker receives it intending a compliance with the terms upon which he receives it, and after he has received it with such intent he converts it to his own use intending to deprive the owner thereof, the crime is embezzlement.

The property alleged to have been stolen as shown by the indictment and evidence in this case, was a miscellaneous lot of personal property owned by Dr. C. H. Richards and Luella Richards, his wife, comprising the mercantile contents of a drug store and other personal property owned by the Richards at Rusk, Woods county, O. T. Dr. Richards having failed in health, went with his wife to Dwight, Illinois, stopping on the way in Kansas City, Kankakee and Chicago. When starting to Illinois this property was left in

the custody of one C. W. Chamberlain. The defendant, Charles Flohr, wrote to Dr. Richards at Dwight, Illinois, that Chamberlain was not taking proper care of the drug store, that he was opening the store and disposing of the goods, and that if he had the key he would take the best of care of it. Dr. Richards testified: "We believed him and sent a dispatch to him and also to Mr. Chamberlain, and Mr. Chamberlain delivered the key to him. Mrs. Richards testified to the same effect. In fact there is no dispute but that the property came into the possession of the defendants by authority of Dr. Richards and his wife, the owners thereof, pursuant to the above mentioned letter written to them by Mr. Flohr.

Counsel for the defendants contend that it is not shown in the record that the contents of the letter was not true and in order to constitute fraud it was essential to establish that such representations were false. In their brief counsel say: "The Territory having established beyond a reasonable doubt that the articles described in the indictment were entrusted to Charles Flohr in a legal and lawful manner, it necessarily follows that he could not be guilty of larceny in reference to them, but that a conversion or concealing of the same would constitute the offense of embezzlement if any at all."

We do not think this is a correct statement of the law in the premises; nor do we think it necessary to establish the falsity of the representations made in order to show that the taking of the property was with the intent to convert it to the taker's own use, and to deprive the owner thereof. If the letter was written by Flohr to Richards, with the intent

by that means to get possession of the key from Chamberlain, and in this way access to and possession of the property with the intent to convert it to his, Flohr's, own use, and to deprive the owner thereof instead, or to take care of it for the owner's benefit, such acquiring of the property with such intent was fraudulent, and the appropriation of the property under such circumstances was a larceny thereof, whether the representation in the letter was true or false, and the intent and purpose of Flohr in so securing possession of the property was a question of fact to be submitted to the jury. See *Devore v. Territory,* 2 Okla. 562.

A careful examination of the testimony, however, has not convinced us of the truth of the statements in this letter from Flohr to Richards, for upon the cross-examination of Mr. Flohr himself in the trial of the case, he answered that at the time he made this representation he knew nothing of the manner in which Mr. Chamberlain was handling this stock of goods; that he lived some ten or eleven miles from Rusk, and had no opportunity to know what Chamberlain's acts were, and he further admitted that such statements made to the Richards were made in the consciousness that he did not know what the facts were.

The representation of facts made for the purpose of getting possession of the property when the person making them has no knowledge upon the subject of his representations is within and of itself a fraud, and is a falsehood in so far as it is an attempt to convey information. That the defendants took and secreted a large portion of this property is not left to conjecture, and that it was the property of Dr. Richards and his wife is made equally certain by the proofs

in the case.   The manner in which the defendants came into possession of it having been established it was competent for the court to submit to the jury the question as to whether or not they received possession with the intent then and there to convert it to their own use, and deprive the owners thereof, which fact it was the duty of the jury to determine; and if determined in the affirmative, it was their further duty to return a general verdict of guilty, as charged in the indictment.

It is further contended by the plaintiffs in error that a bill of sale shown to have been executed by Mrs. Richards in the absence of her husband, on the 21st day of September, and dated back to the 10th day of June, was sufficient to show that what was done by the defendants in the premises was for the purpose of benefiting the owners of the property, and that the acts of the defendants in doing whatever was done were not felonious.   This, however, was a question for the jury, and not for the court.

It is urged by the defendants that the evidence of the witness Huntington, covering fifty-five pages of the record, should have been excluded from the consideration of the jury, at least the principal portion of his testimony, upon the ground that the witness was allowed to refresh his memory from a memorandum not shown to have been compiled by himself.   This witness is shown to have been an officer of Woods county, a member of the sheriff's force, and through the service of a writ of replevin in an action to recover possession from the defendants of certain portions of the goods enumerated in the indictment, came in possession of the goods found by him upon the premises of the defendants, and

in testifying to the goods so found, he made use of a copy of his return on the order of delivery, showing the goods he found on the premises and had taken under the writ. This copy, made use of by the witness, -was not made by the witness, because, as he explained, he could not work the typewriter, and he had the clerk make a copy for him, but he testified that it was made under his direction, and in his presence.

It is also objected in this connection to the witness using a copy of the indictment furnished by order of the court, containing a description of the items enumerated in the indictment.

The list of articles enumerated in the indictment covers some fourteen pages of closely typewritten matter, principally small items, such as found in a general drug store, many of which were recovered by the process of replevin, and as above stated were listed in the officer's return of the writ, together with many items not shown in the indictment.

Proof showing property taken from the defendant enumerated in the indictment was material and the evidence of the witness Huntington was called for in this behalf; and for the purpose of expediting matters the court directed that the items enumerated in the indictment be copied and when copied directed that a copy be furnished to the witness, who used the copy of items recovered by him and such copy of the indictment in giving his testimony, explaining at the time that he was able to state from memory the particular items recovered by him, but that he could not presently recall all of them without the memoranda, refreshing his recollection in this respect.

We think it was competent for the witness to use the copy of a return made by himself, such copy having been written under his direction and supervision, and that it was not error for the court to permit the use of such copy of the indictment, the court having caused the same to be made, and for the purpose of convenience, allowing the witness to use it in his testimony.

There appeared to be but one copy of the indictment for use upon the trial of the case.   It was within the discretion of the court for the purpose of expediting the business of the court to allow the witness to use a copy of the indictment so made and furnished him, the same being used only for the purpose of stimulating present recollection with reference to long lists of items impossible to fully enumerate without refreshing present recollection.

It is further objected in this connection that the witness was permitted to testify with reference to articles found which were not included in the indictment, or charged to have been stolen.   We think it was not error for the court to permit the witness to show the items which were there found, and to show in that same connection that they were items of property belonging to the complaining witnesses, as evidence of defendant's guilt in taking the things which were enumerated.

A like objection is made to the testimony of Emmet Noel, who as deputy sheriff under a search warrant searched the house of defendants, and gave evidence of a list of articles which he found there, a part of which were enumerated in the indictment, and some not.

As before remarked in reference to like testimony by the

witness Huntington, under the peculiar circumstances of the case, we do not think the enumeration of the articles taken by this witness, some of which were enumerated in the indictment, others not, was material error, or in fact error at all.   See *Lewis v. State*, 4 Kan. 253.

Upon the cross-examination of Mrs. Luella Richards, for the purpose of affecting her credibility, a question was propounded to her with reference to her marriage to Dr. Richards; and when the complaining witness, C. H. Richards, was on the stand like questions were propounded to him on cross-examination, which, if answered affirmatively, would show that Mr. and Mrs. Richards, up to a date named, had lived in adulterous relation to each other, and that during that time Dr. Richards was not divorced from a former wife, who resided in the state of Illinois.   It was also sought to discredit Dr. Richards' testimony by showing upon cross-examination that in the practice of his profession he had been guilty of producing an abortion in two certain instances.   All of this testimony was by the court excluded, and the exclusion of it is complained of in this case.

The defendants testified to certain understandings and agreements had with Dr. Richards and his wife, and with reference thereto there was a material conflict in the testimony.   This cross-examination touching character was here tendered for the purpose of affecting the credibility of the witnesses.   The questions propounded did not tend to question their reputation for truthfulness.   They went to the general moral character and tended to hold them up to public contempt, ridicule and disgrace, while at the same time their general character for truthfulness may have been un-

impeached, and the Territory. entitled to their testimony before the jury uninfluenced by matters irrelevant to the cause, and which do not tend to impair their credit as truthful witnesses. The inquiry made does not seem to have been made the subject of legal investigation by indictment or otherwise, and as the questions propounded were entirely disconnected with the subject under investigation, and did not tend to impeach their reputation or character as truthful persons, we think the court committed no material error in excluding this evidence.

Upon the trial of the case a witness by the name of Hawkes was called by the Territory. It appears from the record that the witness was a stenographer, and had taken the testimony in the case of the State of Kansas v. Richards and Richards, at Wichita, Kansas, in the trial of which case the defendants, Charles and Emma Flohr were witnesses. The witness Hawkes when placed on the witness stand testified to certain questions propounded to Flohr in the trial at Wichita, and the answers given by him thereto. This testimony was offered for the purpose of impeachment, and upon cross-examination he was asked if he had his shorthand notes taken at the trial, and answered that he had. He was then asked to read from the notes the balance of the testimony given by Charles Flohr and Emma Flohr at that trial other than that he had already given. The question was objected to on the part of the Territory, and the objection was sustained. We think the ruling of the court was correct in this respect.

This offer was too general. While it is the correct rule that where a party has introduced part of a conver-

sation or portions of a written statement the adverse party is on cross-examination entitled to the whole of such conversation or statement relating to the subject-matter of the examination in chief, yet it must be offered in such manner that the court can determine its materiality and relevancy before it has gone to the jury. It does not necessarily follow that because a portion of the questions and answers submitted to and given by a witness upon a former trial are admitted in evidence, that the whole of his testimony given in the former cause becomes competent or material. And as this offer was of the entire testimony as shown in the stenographer's shorthand notes, we think there was no error in sustaining the objection to its introduction.

It is urged that a reversal of the judgment in this case should be had because of the failure on the part of the court to give the following instruction requested by the defendants, viz:

"The court instructs the jury that if after having considered all the evidence in this case, and after hearing the arguments of counsel, and instructions of the court, and after retiring to your jury room and consulting with your fellow jurymen, there remains a reasonable doubt in the minds of any one of the jurors as to the guilt or innocence of the defendants, then the jury cannot convict the defendants."

The court instead gave the jury the following instruction:

"The law presumes the defendants innocent of the crime charged in the indictment, and of every material act and element of the crime charged; and this presumption of innocence obtains in favor of the defendants until their guilt has been established by the evidence, beyond a reasonable doubt; and if, after a full, fair, candid and impartial consid-

eration of all the evidence in the case, you entertain a reasonable doubt of the guilt of the defendants, the law requires you to give them the benefit of such doubt, and find them not guilty.

"Third. The court instructs the jury that a reasonable doubt is that state of the case which, after a full comparison and consideration of all the evidence and circumstances in the case, both for the Territory and for the defense, leaves the minds of the jury in that condition that they cannot say that they feel an abiding conviction, amounting to a moral certainty, from the evidence in the case, that the defendants are guilty of the charge as laid in the indictment. If you have any such doubt, if your conviction of the defendant's guilt does not amount to a moral certainty on the evidence in the case, then the court instructs you that you must acquit the defendants.

"A reasonable doubt is not a mere possible or conjectural doubt, and the jury are not to go beyond the evidence to hunt for doubt. A reasonable doubt must arise from a candid and impartial consideration and investigation of all the evidence in the case, and unless it is such that, were the same kind of a doubt interposed in the graver and more important transactions of life, it would cause a reasonable and prudent man to hesitate, pause and say, I am not satisfied, it is not sufficient to warrant you in saying that there is a reasonable doubt in the case. And if, after considering all the evidence you can say you have an abiding conviction, amounting to a moral certainty, of the truth of the charge as laid in the indictment, you are satisfied beyond a reasonable doubt."

And the jury were reminded in other portions of the charge that they must be satisfied of the guilt of the defendants beyond a reasonable doubt. In support of their contention in this respect, counsel for the defendant cite *State v. Witt*, 34 Kan. 496, 8 Pac. 769 and *Castle v. State*, 75 Ind. 146.

The precise question here presented was before this court in the case of *Hodge v. The Territory,* 12 Okla. 108, 69 Pac. 1077, and the court in that case refused its assent to the rule laid down by the Kansas and Indiana courts. We are content with that decision. It is unquestionably the duty of the court in charging the jury to state to them all matters of law necessary for their information in reaching their verdict, but it is not necessary that each individual juror should be particularly impressed with the views of the court with reference to the law further than it may be done by a correct statement of the law made to the jury as a body, and in this respect the court unquestionably charged the jury correctly in its instruction under consideration.

The following instructions given by the court were excepted to by the defendant:

"5. Fraud, within the meaning of the statute on larceny, is the getting possession of property by means of falsehood, deception or artifice. The meaning of the word 'stealth,' as applied to larceny, is the taking of property secretly and without the knowledge or consent of the owner.

"6. You are further instructed that before you can find the defendants, or either of them guilty, the Territory must prove to your satisfaction, beyond a reasonable doubt, the following propositions: First, that the property charged in the indictment, or some part of the same, was taken. Second, that it was taken either by fraud or stealth, or by both fraud and stealth. Third, that it was the property of C. H. Richards and Luella W. Richards, or one of them. Fourth, that it was taken with the felonious intent to deprive the owners thereof. Fifth, that the defendants were the persons who took the property.

"7. You are further instructed that the indictment in this case charges the property which is alleged to have been

stolen as belonging to C. H. Richards and Luella W. Rich-
ards. If you find from the evidence, beyond a reasonable
doubt, that the offense is described with sufficient certainty
in other respects to identify the act of larceny, but find
that the property taken all belonged to C. H. Richards in-
dividually, or that some of the property belonged to Luella
W. Richards individually, or that some of the property be-
longed to C. H. Richards individually and some of it to
Luella W. Richards jointly, then the variance between the
allegation in the indictment as to the ownership of the
property alleged to have been stolen, and the ownership as
shown by the evidence is not material.

"15. You are further instructed that evidence has been
introduced in this case showing that an action of replevin
was commenced by one or both of the Richards to recover
the possession of the property, or a part of the property,
alleged in the indictment to have been stolen, and that in
that suit some part of the property was taken by the sheriff
under the order of delivery issued therein, and that a re-
delivery bond was given by the defendants, and that the
property taken under the writ of replevin was retained by
them. The evidence of this replevin action so introduced
was competent for the purpose for which it was offered, as
a circumstance throwing light upon the main issue, but the
fact that this replevin action was commenced, and the fact
that the defendants, or one of them, gave a redelivery bond
and retained the property, in no wise relieves him or them
of the criminal responsibilty of the larceny of the property,
if you find from the evidence, beyond a reasonable doubt,
that the property was in fact stolen by them or either of
them."

It is not pointed out by counsel for defendant wherein
the court committed error in the fifth instruction, and we
perceive no error therein. And with reference to instruc-
tion No. 6, that such charge to have been good should have

said that the property taken should have been of the value of $20.00 or more, this objection (barring the fact that it does not correctly state the statutory definition of grand larceny) would be good, if the court had failed in its instructions to advise the jury of the distinction between grand and petit larceny, but such distinction was fully noted by the court in instruction No. 22, where the jury was advised that in order to find the defendants guilty of grand larceny they must find that the property stolen was of value more than $20.00, and if they found the value of the property stolen was not of a value exceeding $20.00 then they could only find the defendants guilty of petit larceny.

We think it was sufficient for the court in the course of its instructions to advise the jury in reference to the distinction between grand and petit larceny, and it is not necessary to repeat it when once plainly given.

The charge of the court in the sixth instruction, that before the jury could find the defendants or either of them guilty they must find that the property stolen was taken either by fraud or stealth or by fraud and stealth, was we think correct. If it was so taken, the crime as defined by the statute was committed, and might be proved under the indictment charging that the property was taken by fraud and stealth. The indictment could not charge the crime in the exact language of the statute, to wit, that it was taken by fraud or stealth, as such language would not charge that it was taken in either manner. We have heretofore sufficiently noted this distinction.

The objection that the seventh instruction is erroneous because by it the jury were permitted to find the defendants

guilty, if they found that the property belong to C. H. Richards or Luella Richards, or both of them jointly, is without substantial foundation.

The objection made to the fifteenth instruction, that it invaded the province of the jury in determining the weight and effect of testimony, is not well taken.

The court in that instruction informs the jury that the fact of a replevin action being brought and re-delivery bond having been given by defendants does not relieve them of criminal responsibility for the larceny of the property taken in replevin.   The court is not here speaking of the light thrown upon the transaction by the replevin proceeding, relative to the guilt or innocence of the defendant, but directed the jury's attention to the fact that the proceedings in re-- plevin did not affect the criminal responsibility of the de-- fendants.

The defendants' objection to the seventeenth instruc-- tion of the court says that in order to have been correct, it should have stated to the jury that they must find that the representations by which defendants secured possession of the property were false and untrue, in order to find them guilty of a fraudulent taking. We have heretofore discussed this proposition under the head of objections to the intro- duction of testimony, and feel it unnecessary to further dis- cuss that proposition.   The court gave the eighteenth in- struction as follows:

"18.   You are further instructed that if you find from the evidence that on or about the 10th day of June, 1902, the prosecuting witness, C. H. Richards, was indebted to the defendant Charles Flohr in the sum of eighteen hundred dollars and accumulated interest thereon, and that at or

about that time the said C. H. Richards, as security for the payment of said indebtedness, made and executed to the said Charles Flohr a bill of sale of the drug stock and the fixtures, and that the key to the drug store wherein such property was contained, was turned over to the defendants, or either of them, because of their having such bill of sale as security for their claim, and in order to place them in possession of the property upon which they had the bill of sale, and in order to give them possession under their lien, then in such a case the defendants could not be found guilty of larceny for the misappropriation of property coming into their hands under such circumstances."

It is urged on behalf of the defendants that this instruction was erroneous and misleading, for the reason that it is based upon evidence or facts not testified to by any witness, that is, that the key to the drug store wherein such property was contained was turned over to the defendants because of their having a bill of sale as security for their claim, and in order to place them in possession of the property. We think counsel are mistaken in this objection, and mistaken in their criticism of the instruction. Mr. Towne of counsel for defendants, in his opening statement of the defense, informed the jury that during the fall of 1901, the prosecuting witness being indebted to defendant Flohr, had executed and delivered to them three promissory notes for $600.00, $500.00 and $700.00 respectively, each falling due on the 10th day of June, 1902, and in this connection he said to the jury:

"The matter drifted along until about the time the notes became due, and Richards could not meet those notes, and in order to secure Flohr, he executed and delivered to him a bill of sale of the goods that were in this store, excepting the commission goods."

And afterwards upon the trial of the case the defendant testified as follows:

"By Mr. Towne:  Q.  I will ask you to state, Mr. Flohr, when this bill of sale of these goods was made, where was it made out?  A.  Why it was brought to my house prepared. Q.  What time was that?  A.  That was last June.  Q. Well, was there any bill of sale after that ever made by Richards to you of this same stock of goods?  A.  Nothing; there was a copy drawn from the original bill of sale.  Q. Do you know what became of that bill of sale?  A.  No sir, I do not.  Q.  Where is the last place you ever saw it at?  A.  It was in my trunk, with the three notes and some checks, and some other contracts and papers, with a rubber band around them."

The statement and testimony above quoted we think fully justified the instruction as given, and removes the objection and criticism made thereto by counsel for the defense.

The twentieth instruction of the court to the jury, excepted to by defendants, is as follows:

"20.  You are further instructed that if you find from the evidence that C. H. Richards and his wife went to the house of the defendants during the month of September, 1902, taking with them a part of the property described in the indictment, and when they left the premises of the defendant, that they left such property in their trunks, and in the care and custody of the defendants, and you further find from the evidence that after C. H. Richards and his wife had left the place of the defendants, that the defendants, or either of them, opened the trunk so left in their care and custody and took the property therefrom with the felonious intent to deprive the owners thereof, then the defendants or one of them that took such property under the circumstances above quoted, is guilty of larceny, and you should so find."

Counsel object that under the facts as stated in this instruction, it would not constitute larceny if any offense at all.

If there had been a refusal on the part of the defendants on demand by the complaining witness to deliver the trunk so left there, the criticism of counsel to this instruction would be entitled to weight in the consideration of this case. But if, as contemplated in the instruction, the trunk was unauthorizedly opened by defendant, and property was taken therefrom by the defendants or either of them, such taking was a larceny by stealth.

Counsel for the defendants present for the consideration of the court the fact that the record does not disclose the presence of the defendants during the progress of the trial after a recess of the court, citing record page 155. No such condition is disclosed on that page, and we find nothing in the record which justifies the contention. At page 105 of the record it appears that the court had under advisement a legal proposition. An authority had been handed to the court, and counsel proceeded to argue the proposition under consideration, when the court said, "Gentlemen of the jury, it will probably be just as well to take a recess for ten minutes. During the time you are out you will not talk with anybody about this case or allow anybody to talk with you, or form or express an opinion upon it, until it is finally submitted to you, nor will you talk among yourselves. Be back in ten minutes."

The jury returning to the court, the objection under consideration was overruled, and counsel directed to proceed with the case. This appears to have been during the afternoon session of the court. The record shows the defendant

present when the court convened after dinner. We do not think it necessary that the record should show the presence of the defendants after a recess given the jury, as here indicated; where they are shown to have been present at the convening of the court after the noon adjournment, they will be presumed to be present during that entire sitting of the court, and until the next adjournment, unless the record affirmatively shows their absence.

After a careful examination of this record touching the errors complained of by counsel for defendants in their brief in this case, we are unable to find such prejudicial error therein as will justify a reversal thereof. The judgment of the district court is therefore affirmed, with costs.

Pancoast, J., who presided in the court below, not sitting; all the other Justices concurring.