Curtis **DICK**, Individually and as Administrator of the Estate of Martin **Dick**, Deceased, Plaintiff in Error,

v.

Henrietta **REAVES** and Ruby L. **Holt**, Defendants in Error.

No. 40899.

Supreme Court of Oklahoma.

July 10, 1967.

Bruce, Darrell, & Bruce, by J. J. Bruce, Oklahoma City, for plaintiff in error.

Carlos Wadlington, Ada, for defendants in error.

WILLIAMS, Justice.

This is an appeal from a judgment entered by the district court (on appeal to, and trial de novo in, that court) affirming a previous decree of distribution entered by the county court In the Matter of the Estate of Martin Dick, who died intestate in January, 1959.

Although it is our opinion that the determinative issue herein is the question of the constitutionality of this State's miscegenation statutes, 43 O.S.1961 §§ 12 and 13, we believe it necessary for the purpose of clarification to summarize the proceedings below culminating in this appeal.

Subsequent to the death of Martin Dick, the intestate's only surviving child, Curtis Dick, plaintiff in error herein, filed a petition for letters of administration in the county court, and alleged, in part, that he was the sole heir of the intestate and prayed that he be appointed administrator of the intestate's estate. After proper notice and hearing, plaintiff in error was appointed administrator.

During the pendency of the administration proceedings, defendants in error herein, hereafter referred to as intervenors, filed an intervening petition in which they alleged that the intestate was "survived by his wife, Nicey Noel Dick, and his son, petitioner, Curtis Dick, and each of them inherited one-half interest in his estate; that, thereafter, * * * said Nicey Noel Dick, surviving wife of said Martin Dick, deceased, died intestate * * * and left surviving her as her sole and only heirs, her daughter, Henrietta Reaves, and a granddaughter, Ruby L. Holt, she being the child of a predeceased daughter of said Nicey Noel Dick; that by reason of the premises, each of these petitioners is the owner of a one-fourth interest in the estate of said Martin Dick, and same should be distributed to them; they together owning a one-half interest therein."

In his reply to intervenors' petition, Curtis Dick alleged that the intestate was a member of the Chickasaw Tribe of Indians of 7/8ths blood and that his mother, Josephine Monroe, was a full blood Chickasaw Indian. He further alleged that Nicey Noel Dick "* * * was a Negro, and classed under the statute of the State of Oklahoma as a person of African descent, and by reason thereof there was no legal marriage and could not be any legal marriage between the said Nicey Noel Dick and Martin Dick, deceased, and by reason thereof the said Nicey Noel Dick, nor her heirs, did not and could not have any inheritable interest in and to the property of the said Martin Dick."

Thereafter, the county court, in its final decree, adjudged Nicey Noel Dick, as well as Curtis Dick, to have been a surviving heir of the intestate, and her surviving

heirs, the two intervenors, to be entitled to share equally in her one-half interest in Martin Dick's estate. From this final decree, Curtis Dick, hereinafter referred to as petitioner, appealed to the district court.

At the trial de novo in the district court, Curtis Dick introduced in evidence enrollment records of the Choctaw and Chickasaw Nations identifying the intestate on the Chickasaw rolls as being of ⅞ths Indian blood; his mother, Josephine Monroe, on the same roll as being a Full Blood Indian; and his father, Taylor Dick, on the Choctaw Roll as being of one-half Indian blood. These records also represented that one Willis Monroe was Josephine Monroe's father.

Intervenors introduced a Chickasaw Nation enrollment record indicating that a Willis Monroe was on the Chickasaw Freedmen Roll. Intervenors called two witnesses, both of whom were sisters of Nicey Noel Dick, whose testimony, in effect, was that both Martin Dick and his mother, Josephine Monroe, were part Negro.

From the record before us, it is clear that Nicey Noel Dick, whose ceremonial marriage to the intestate, Martin Dick, was performed in January, 1939, was admittedly a Negro.

At the conclusion of the district court proceedings, the county court decree was affirmed. After the overruling of his motion for a new trial, petitioner perfected the present appeal.

On appeal, petitioner argues, in summary, that the quantum of Indian blood of an enrollee, as shown by the enrollment records of the Five Civilized Tribes prepared by the Dawes Commission, is conclusive; that such enrollment records establish that Martin Dick was ⅞ths Chickasaw Indian and his mother, Josephine Monroe, was a Full Blood Indian; that neither Martin Dick nor his mother were of African descent, but were members of the "white race" as that term is defined in Art. XXIII, § 11 of the Oklahoma Constitution;

and as a member of the white rae, Martin Dick's ceremonial marriage to Nicey Noel Dick, a Negro, was null and void under the provisions of 43 O.S.1961 § 12.

Intervenors contend that the above mentioned enrollment records are not conclusive as to the question of Indian blood and the evidence adduced below establishes that Martin Dick was of African descent and thus legally married to Nicey Noel Dick. In the alternative, intervenors argue that the marriage of Martin Dick and Nicey Noel Dick is valid as the prohibition contained in 43 O.S.1961 § 12 is unconstitutional.

In view of recent decisions of the Supreme Court of the United States in Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010, holding that Virginia miscegenation statutes violate the United States Constitution, we feel compelled at this time to again review the long standing view of this Court that the provisions of 43 O.S.1961 §§ 12 and 13 are valid.

The provisions of 12 and 13, 43 O.S. 1961, are as follows:

12. "Miscegenation prohibited.—The marriage of any person of African descent, as defined by the Constitutions of this State, to any person not of African descent, or the marriage of any person not of African descent to any person of African descent, shall be unlawful and is hereby prohibited within this State.

13. "Penalty for miscegenation.— Any person who shall marry in violation of the preceding section, shall be deemed guilty of felony, and upon conviction thereof shall be fined in any sum not exceeding five hundred dollars, and imprisonment in the penitentiary not less than one nor more than five years."

In Jones v. Lorenzen, No. 41635, Okl., we reviewed our prior decisions holding §§ 12 and 13, supra, constitutional and stated:

"In view of this court's traditional practice of upholding its former deci-

sions which involve questions of constitutional law, and in view of the fact that the great weight of authority holds such statutes constitutional, and the Supreme Court of the United States not having decided the question, we feel duty bound to again hold the statutes in question constitutional."

In Loving v. Virginia, supra, the Court stated:

"This case presents a constitutional question never addressed by this Court: whether a statutory scheme adopted by the State of Virginia to prevent marriages between persons solely on the basis of racial classifications violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment."

In answering this question, the Court held:

"There is patently no legitimate overriding purpose independent of invidious racial discrimination which justifies this classification. The fact that Virginia only prohibits interracial marriages involving white persons demonstrates that the racial classifications must stand on their own justification, as measures designed to maintain White Supremacy. We have consistently denied the constitutionality of measures which restrict the rights of citizens on account of race. There can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central, meaning of the Equal Protection Clause.

"These statutes also deprive the Lovings of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment. The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.

"Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. Skinner v. State of Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). See also Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1882). To deny this fundamental freedom on so unsupportable a basis as the racial classifications embodied in these statutes, classifications so directly subversive of the principle of equality at the heart of the Fourteenth Amendment, is surely to deprive all the State's citizens of liberty without due process of law. The Fourteenth Amendment requires that the freedom of choice to marry not be restricted by invidious racial discriminations. Under our Constitution, the freedom to marry, or not marry, a person of another race resides with the individual and cannot be infringed by the State."

In accordance with this clear mandate of the Supreme Court of the United States, we hereby hold that the provisions of 43 O.S.1961 §§ 12 and 13 violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment and expressly overrule all prior decisions of this Court to the contrary.

As the marriage of Martin Dick and Nicey Noel Dick was valid, regardless of the racial ancestry of either party to the marriage, there is no need for this Court to address itself to any other question presented by this appeal.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, BLACKBIRD, HODGES, LAVENDER and McINERNEY, JJ., concur.

BERRY, J., concurs in result.