Gerald W. AUTRY, on his own behalf and on behalf of all others similarly situated, Plaintiff,

v.

Burley B. MITCHELL, Jr., District Attorney for the Tenth Judicial District, on behalf of himself and all others similarly situated, Defendant.

No. 75–0344–CRT–5.

United States District Court, E. D. North Carolina, Raleigh Division.

Oct. 14, 1976.

Norman B. Smith, Smith, Patterson, Follin, Curtis & James, Greensboro, N. C., for plaintiff.

Rufus L. Edmisten, Atty. Gen., Joan H. Byers, and Jack Cozort, Associate Attys., North Carolina Dept. of Justice, Raleigh, N. C., for defendant.

Before CRAVEN, Circuit Judge, LARKINS, Chief District Judge, and DUPREE, District Judge.

## MEMORANDUM OF DECISION

CRAVEN, Circuit Judge:

### I.

On August 14, 1974, Gerald W. Autry was a fugitive from justice charged with first degree rape, felonious assault, robbery with a dangerous weapon, and assault and battery. Pursuant to N.C.G.S. § 15–48, set out fully in the margin,[1] Autry was declared an outlaw. He turned himself in to Wake County law enforcement officers the same day and thereafter brought this suit to declare the outlawry statute unconstitutional and to enjoin its future enforcement. He asked that the action be certified as a class action and that plaintiff's class be constituted of all persons who have been declared

---

1. The statute reads as follows:

In all cases where any justice or judge of the General Court of Justice shall, on written affidavit, filed and retained by such justice or judge, receive information that a felony has been committed by any person, and that such person flees from justice, conceals himself and evades arrest and service of the usual process of law, the justice or judge is hereby empowered and required to issue proclamation against him reciting his name, if known, and thereby requiring him forthwith to surrender himself; and also empowering and requiring the sheriff of any county in the State in which such fugitive shall be to take such power with him as he shall think fit and necessary for the going in search and pursuit of, and effectually apprehending, such fugi-tive from justice, which proclamation shall be published at the door of the courthouse of any county in which such fugitive is supposed to lurk or conceal himself, and at such other places as the justice or judge shall direct; and if any person against whom proclamation has been thus issued continues to stay out, lurks and conceals himself, and does not immediately surrender himself, any citizen of the State may capture, arrest, and bring him to justice, and in case of flight or resistance by him, after being called on and warned to surrender, may slay him without accusation of any crime. (1866, c.62; 1868–9, c.178, subch. 1, s.8; Code, s.1131; Rev., s.3183; C.S., s.4549; 1969, c.44, s.30; 1973, c.1141, s.9.)

outlaws or who may in the future be declared outlaws; he further sought that defendant's class be held to constitute all district attorneys of the State of North Carolina and other officers and persons who have applied, or in the future may apply, for the issuance of outlawry proclamations to the statute.

In a memorandum opinion and order entered February 4, 1976, Chief Judge Larkins held that Mr. Autry met the requirements of Rule 23, Federal Rules of Civil Procedure, and is well able to fairly and adequately protect the interests of the plaintiff class. Since he was not proceeding pro se but was represented by counsel, we agree, and, for the reasons stated by Judge Larkins, we certify the class sought by the plaintiff and hereinafter view the action as one brought for the benefit of all persons who have been outlawed or who may in the future be outlawed pursuant to N.C.G.S. § 15–48.

Judge Larkins did not undertake to decide whether to grant plaintiff's prayer to join as parties defendant all district attorneys and others who have sought to utilize the statute or who may in the future do so. We think the reasons he advanced for certifying plaintiff's class apply with equal force to certification of the requested class of defendants. The defendant Burley B. Mitchell, Jr., is himself-an experienced and able prosecutor well versed in both the procedural and substantive aspects of the criminal laws of North Carolina. We think he knows as well as any prosecutor would know the utility and value of the challenged statute and is well able to define its proper scope and defend its constitutionality. Moreover, it should be noted that Mr. Mitchell is capably represented by competent staff members of the office of the Attorney General of North Carolina, who is himself capable of representing the interests of the public and the prosecuting attorneys within the State. Accordingly, we

certify defendant's class to contain all district attorneys and other officers and persons who have applied, or in the future may apply, for the issuance of outlawry proclamations pursuant to N.C.G.S. § 15–48. We find the facts to be as alleged in paragraph five of the complaint with respect to the establishment of this class.

■ Mr. Mitchell and the members of his class initially defend on the ground that Autry and others who may have been outlawed, or who may be outlawed in the future, lack standing, and that there is no justiciable controversy. This question was previously presented to Chief Judge Larkins by way of motion for summary judgment and was denied by him. We adopt his memorandum opinion and order, entered February 4, 1976, as our own, and join and concur with Judge Larkins in holding that the plaintiff and others similarly situated, heretofore or hereafter, have a personal stake in the outcome of the controversy sufficient to assure that the dispute will be presented, as it has been, in an adversary context. We agree with Judge Larkins that one who has been declared an outlaw (or his administrator) need not wait until he has been wounded or killed in order to obtain standing to bring a suit challenging the validity of the statute.

## II.

■ Autry and the members of his class impugn the constitutionality of N.C.G.S. § 15–48 on the grounds that the statute denies procedural due process and equal protection of the laws to those persons declared to be outlaws in violation of the Fourteenth Amendment of the United States Constitution. We agree, and hold the statute unconstitutional. We put to one side Autry's attack upon the statute as incompatible with the Eighth Amendment prohibition of cruel and unusual punishment.[2] N.C.G.S. § 15–48 means this:

2. If the statute is viewed as a penal one, we would have little difficulty in concluding that authorizing citizens to slay an outlawed person with impunity is so disproportionate to the underlying status of accused felon as to be

cruel in its excessiveness and unusual in its character and inconsistent with evolving standards of decency that mark the progress of a maturing society. *Trop v. Dulles*, 356 U.S. 86, 101, 102, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

The judges of North Carolina *shall* outlaw any person charged by affidavit with a felony if it appears in the affidavit that the accused person evades arrest, by having fled or concealed himself, and will not submit to service of process. Anyone may file such an affidavit. The judge is without discretion: the statute does not authorize him to consider whether or not the affidavit is true, or whether the felon is dangerous to others, or whether such an extreme measure is wholly inappropriate and unnecessary. Indeed, as the statute is drawn the judge does not act as a judge but acts ministerially and is *required* to issue the proclamation upon presentation of a facially sufficient affidavit. The effect of the proclamation is to license the public to kill the accused felon if he runs after being called on to surrender.

### A.

We hold the statute procedurally deficient under the Due Process Clause of the Fourteenth Amendment in these respects:

(a) It is not required that an impartial judicial officer determine probable cause, *i. e.*, that a felony has been committed and that the person proposed to be outlawed probably committed it.

(b) Alternatively, it is not required that an arrest warrant have been issued or an indictment returned by a grand jury.

(c) It is not required that an arrest warrant or other process have been served, or an attempt made to serve it, and a return made that the accused is not to be found within the county.

(d) There is no provision for notice and opportunity to be heard. The State's argument that a fleeing felon does not wish to be heard and would not avail himself of the opportunity is fallacious. It is commonplace for those who deny the validity of judicial process to appear specially by legal representative and to move to quash summons and process. If there were simply notice to show cause, the family of an accused felon might hire counsel to quash the proclamation for the purpose of diminishing the risk of death. But the proclamation is issued ex parte, without notice to anyone, and without provision for a hearing or for any lapse of time within which to conduct it.

### B.

The North Carolina outlawry statute, as implemented, recognizes three classes of accused felons: (1) a large group who presumably are arrested or surrender soon after indictment or accusation; (2) hundreds and perhaps thousands per annum who are not quickly arrested and who do not surrender but are nevertheless *not* outlawed; and (3) perhaps one or two, and certainly no more than a half dozen, who are outlawed annually. Counsel have furnished us a partial list of North Carolina's 20th century outlaws. According to that compilation, we know only of a total of 20 outlaws beginning in 1943 and running through 1975. The only consistent difference we can discern between the outlaws and the thousands of fleeing accused felons who have *not* been outlawed is that with respect to the former someone filed an affidavit resulting in promulgation of outlawry. The statute makes no distinction with respect to dangerousness. Nor is there any distinction based on the nature of the felony. One might expect that all accused murderers or all accused rapists would be outlawed if they did not surrender and that lesser ac-

---

The harder question is whether the law is penal in nature.

> If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose.

*Id.* at 96, 78 S.Ct. at 595.

Although the outlawry statute threatens injury and death, its purpose, the State contends, is to compel submission to judicial process rather than to punish the act of fleeing. The distinction is not an easy one to make, and we do not presently undertake it.

cused felons would not receive the status. If it is so, the record does not so indicate, and the statute itself makes no such distinction.[3] Whether one is outlawed appears to be a matter of caprice. At least ten of 30 district attorneys have never utilized the statute. The defendants suggest no standards that are used to determine whether an outlawry proceeding will be initiated against a fleeing felon, and the statute contains none.

The difference of treatment of the classes of accused felons is extreme. Since July 1, 1975, private persons may not make arrests in any situation, except when requested to provide assistance to law enforcement officers. N.C.G.S. § 15A–404. And officers are authorized to use deadly force in arresting a person only when that person "presents an imminent threat of death or serious physical injury to others unless apprehended without delay . . . ." N.C.G.S. § 15A–401(d)(2).

Contrast the danger put upon the outlawed accused felon: if he should become fearful of armed citizens—not in uniform—and should run, he may be slain "without accusation of any crime." N.C.G.S. § 15–48. The extreme remedy granted the citizenry infringes, we think, a fundamental right: that one not be denied life, or be wounded, except by due process of law.

■ Whenever a statutory classification affects fundamental rights, it will encounter equal protection difficulties unless justified by a compelling governmental interest. *Shapiro v. Thompson,* 394 U.S. 618, 634, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Schilb v. Kuebel,* 404 U.S. 357, 365, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971). We are inclined to think that the State's interest in the apprehension of one against whom an arrest warrant or indictment has been returned based on probable cause to believe that he has committed a capital felony, *e. g.,* murder, may properly be characterized as compelling. But that is not the thrust of the statute. The accused felon may be wholly innocent, and as we have discussed more fully under the preceding section, there is no requirement of a finding of probable cause to believe him guilty.

Moreover, felonies embrace a multitude of sins under the laws of North Carolina. In addition to capital felonies, it is provided by statute[4] that if the crime was a felony at common law it remains so under the law of North Carolina and that any offense punishable by imprisonment in the State's prison, even for a relatively short term, is a felony. Additionally, there are miscellaneous crimes that the legislature has seen fit to denominate as felonies. For example, if one of our college ball players should be accused of accepting or agreeing to accept a bribe given for the purpose of attempting to limit the margin of victory of his own team, he is guilty of a felony. N.C.G.S. § 14–374. We doubt the legislature is fully aware that its statutory scheme has subjected college boys and girls to the risk of death at the hands of irate alumni if they fail to immediately surrender themselves to the local sheriff. We are quite certain that the State has no compelling interest that would justify licensing one's teammates to kill the pitcher if he should flee from them upon accusation of throwing the game or even cutting down the margin of victory. Without hesitation we hold that the State has failed to demonstrate a compelling governmental interest in the apprehension of *all* fleeing accused felons and that the statute as drawn and as administered violates the Equal Protection Clause of the Fourteenth Amendment.

■ Even if we assume that the proper test is not "compelling interest," we come to the same conclusion. The traditional equal protection test is *invidious discrimination. Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

---

**3.** Although Autry was accused of rape and other violent felonies, we note that when the dust settled in the criminal court, he was sentenced to 18 years' imprisonment for all offenses.

**4.** N.C.G.S. § 14–1.

Sometimes it is denominated the "rational basis" test. *See McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). "When the law lays an unequal hand on those who have committed . . . the same . . . offense . . . , it has made as invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment." *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). Some accused murderers who fail to surrender are outlawed, and many others are not. To treat the same offenders differently is caprice and is irrational and violates the Equal Protection Clause.

The opposite is also true. It is irrational to treat a college boy accused of throwing a ball game the same as one accused of multiple homicides or bank robbery. It is also irrational, as applied, that a district attorney *or any other person* may occasion promulgation of outlawry against the college basketball player and leave one accused of a capital felony unscathed by the stringency of the statute. It is irrational that there are no standards either in the statute or in the course of the practice to guide prosecutors, not to mention mere citizens, in determining whether to seek promulgation of outlawry.

An appropriate judgment will be entered in accordance with this memorandum of decision adjudging N.C.G.S. § 15–48 to be unconstitutional. Because we think a declaratory judgment will be sufficient relief for plaintiff and his class, we deny the prayer for injunctive relief.