UNITED STATES of America, Appellee,

v.

**James L. McFILLIN, Appellant.**

**No. 80–5063.**

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1981.

Decided Aug. 12, 1981.

Certiorari Denied Nov. 16, 1981.
See 102 S.Ct. 603.

Jack B. Rubin, Baltimore, Md. (Sally C. Chester, Walker, Rubin & Van Bavel, P.A., Baltimore, Md., on brief), for appellant.

Jane W. Moscowitz, Asst. U.S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U.S. Atty., Lynne A. Battaglia, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and WILLIAMS, District Judge.*

RICHARD L. WILLIAMS, District Judge.

The appellant, James L. McFillin, was convicted on December 19, 1980 of three violations of 18 U.S.C. § 844(i) arising out of the death on May 10, 1979 of Nathan A. Allen, Sr., the wounding of a passenger in Allen's truck, and the destruction of the vehicle by use of explosives. From this conviction he appeals, arguing that the district court erred in admitting evidence regarding miniscule particles, called taggants, which were placed in the explosive to permit tracing its ownership after detonation. Specifically, the appellant contends that placing taggants in the explosive violates his Fourth Amendment right to be free from unreasonable searches and seizures and his penumbral right of privacy. He also contends that the use of taggants is based on a novel scientific theory which is so unreliable that evidence derived from taggants should not be presented to the jury. We hold that the appellant lacks standing to assert his Fourth Amendment claim, that no privacy rights attach to commercial transactions such as the purchase of an explosive, that the taggant evidence was properly admitted, and we affirm the judgment of conviction.

I

On May 10, 1979 at around 10:00 p.m., Nathan Allen and a friend got into Allen's truck to go home from work. As Allen turned on either the lights or the ignition, the truck exploded. Allen was killed and the friend was injured.

Allen and McFillin, the appellant, who are uncle and nephew, had been neighbors since 1978. McFillin believed his wife was in love with Allen. Somewhere around Easter, 1979, Mrs. McFillin told her husband that she would leave him as soon as school

* The Hon. Richard L. Williams, United States District Judge for the Eastern District of Virginia, sitting by designation.

was out. Two days before the murder, McFillin told a neighbor's son that he would like to blow up Allen's house.

On May 10, 1979, Allen was working the 3:00 to 11:00 p.m. shift. That morning he had an argument with Mr. and Mrs. McFillin. Also on that day, McFillin left his house in the late afternoon for at least one-half hour. This period of time would have been sufficient to attach or activate a bomb.

When McFillin returned home on May 10, he called his brother Bob and insisted that the two of them leave immediately to visit property owned by McFillin in West Virginia.

After the explosion, the Bureau of Alcohol, Tobacco and Firearms (ATF) examined the site. Pieces of black and white wiring as well as blue and yellow wiring were found. Later, during a search pursuant to a warrant, wires matching the black and the blue and yellow wires were found in the trunk of McFillin's car. Also in the trunk was a notebook in McFillin's handwriting containing dates and shifts which Allen had worked on those dates.

During 1978 and 1979, ATF was engaged in a pilot program to test the safety and effectiveness of taggants. Taggants are plastic, microscopic, color-coded chips which can be imbedded in explosives at the time of manufacture and which can be identified after detonation. The color code keys in with records maintained by ATF and allows the tracing of the explosive to its manufacturer and purchasers.

Taggants were found at the scene of the crime. All but one of the taggants found around Allen's truck and analyzed by ATF indicated that the explosive used in the bomb was Tovex 220, manufactured December 2, 1978 in DuPont's Martinsburg, West Virginia plant. Some of that batch of Tovex 220 was eventually sold to Lawrence Jenkins, a registered dealer in Martinsburg, West Virginia. On March 10, 1979, Jenkins sold two sticks of Tovex 220 to McFillin.

After the event, the defendant had many conversations with ATF agents and was caught in several obvious lies. McFillin went so far as to buy additional sticks of explosives and present them to the ATF agents as that which he bought from Jenkins in West Virginia in March.

## II

McFillin contends that the use of color-coded taggants to identify him as the purchaser of the explosives that killed Nathan Allen violated his Fourth Amendment right against unreasonable searches and seizures. We hold that McFillin had no expectation of privacy in the explosives nor did he have a possessory interest. As a result, McFillin lacks standing to assert a Fourth Amendment claim.

The taggants were recovered in the parking lot where Allen's truck exploded. McFillin had no expectation of privacy in that parking lot. The mere fact that McFillin at one time owned the explosives gives him no claim. Possession alone, without an expectation of privacy, is insufficient to confer standing. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). To the extent his possession of the explosives might have given him a claim, he lost that claim by abandoning the explosives in a public area. When a person has

so relinquished his interest in the property that he no longer retains a reasonable expectation of privacy in it at the time of the search

he has no standing to complain of a Fourth Amendment violation. *United States v. Cella,* 568 F.2d 1266, 1283 (9th Cir.1977). McFillin could have no reasonable expectation of privacy in the parking lot debris from this tragic explosion. His Fourth Amendment argument must fail.

## III

McFillin next contends that the use of taggants in the explosives invades an area of property and personal information that individual citizens justifiably expect to keep private. The expectation of privacy, he argues, stems from the lack of general, public knowledge about the taggant prob-

lem. McFillin goes on to argue that to allow this surreptitious intrusion on personal liberty is to open the flood gates to government surveillance of many innocent activities of citizens.

The right of privacy is more properly raised in the realm of birth, death, intimate relationships, education of children, free exercise of religion and other rights of association the intrusion upon which affects an essential component of a person's dignity. *Cf. Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405, *reh. denied* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *Einstadt v. Baird,* 405 U.S. 438, 453–454, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972); *Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut,* 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645, *reh. denied* 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090 (1944); *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942); *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); *Lovisi v. Slayton,* 539 F.2d 349, 351 (4th Cir.), *cert. denied* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). The use of taggants here reveals nothing intimate about the appellant. Rather, the taggants simply link the debris of the explosion with the appellant's purchase of explosives in his own name from a licensed dealer. This sort of commercial transaction is different in kind from the areas of interest traditionally protected by the right of privacy.

### IV

McFillin also argues that the trial court committed reversible error in admitting expert testimony as to the use of taggants. Taggant evidence is new in the criminal courts. He argues that under *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), evidence deduced from a new scientific theory should only be admitted if it has been generally accepted in its field:

> Just when a scientific principle or discovery crosses the line between the experimental and the demonstrable stages is difficult to define. Somewhere in a twilight zone the evidential force of the principle must be recognized, and while courts go a long way admitting expert testimony deduced from a well recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained acceptance in the particular field to which it belongs.

The appellant contends that taggants are not recognized by the explosives industry as a reliable tracing method. We are of the opinion that the trial court, after hearing the testimony of two experts, was within its discretion in allowing the evidence to be presented to the jury. Further, we feel that the evidence received by the trial court demonstrates that the use of taggants in explosives rests upon well-established scientific principles, so as to make the *Frye* test inapplicable.

The trial court conducted an extensive hearing to determine the admissibility of expert testimony regarding taggant identification. Testimony was presented by two qualified experts. Ronald Elliot Palmer, a forensic chemist with the Bureau of Alcohol, Tobacco & Firearms (ATF), testified that taggants provide a non-destructible method of determining the product, manufacturer, date and shift of manufacture of the explosive. The date-shift code is translated from the permutations and combinations of colors of the taggants. ATF maintains a registry of the codes. He further testified that the taggant program does not involve a novel scientific theory. Rather, the use of taggants to determine the place and date of manufacture of an explosive after it has been detonated is a simple matter of distributing the taggants in the explosive and recovering them after the explosion. Statistical methods are then used to identify the originating batch. While some of the taggants are burned or shattered by the force of the explosion,

those that survive remain unaltered and the codes can be read.

Gerald H. Fuller, manager of the ATF program, also testified. He told the court that taggants had been tested in over 300 explosions and some taggants survived and were recovered in all but one improperly conducted test. Taggants were recovered in statistically adequate numbers in all the properly conducted tests. Fuller also testified about the problems in dispersing taggants in the explosive during manufacture. Before manufacture, the taggants may clump together because of a static charge. However, the manufacturing process distributes them evenly throughout the product. Tovex 220 is manufactured in batches. Each batch receives identifying taggants. A small amount of each batch remains in the machinery and is introduced into the new batch. Thus, there is some possibility of contamination. Fuller stated that contamination is accounted for by the statistical analysis employed to determine the batch of origin.

We feel that the court below fully explored the reliability of taggants with the aid of the testimony of two experts. Furthermore, this testimony demonstrated that no novel scientific principles are involved in taggant identification. Rather, the use of taggants rests upon the commonplace scientific principles that small solid particles can be dispersed in a viscous substance, that these particles can be color-coded in a way which survives the explosion, that they can be recovered and read after detonation, and that statistical measures can allow for contamination and identify the batch of origin. These simple principles are very different from, for example, the behavioral assumptions which must be made in order to make polygraph evidence useful. Here the taggants did survive the explosion in sufficient quantity to permit identification, they were recovered and the batch of origin was determined. Furthermore, the taggant evidence is corroborated by ATF records which demonstrate that McFallin purchased explosives from the same batch identified by the taggants.

The trial court thus was within its discretion in admitting the taggant evidence.

AFFIRMED.