278 N.J. Super. 543 (1995)
651 A.2d 1044
ROBERT G. PERCY, APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF CORRECTIONS, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1994.
Decided January 17, 1995.
*544 Before Judges KING, MUIR, Jr. and EICHEN.
Robert G. Percy, appellant, filed a pro se brief.
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondents (Joseph L. Yannotti, Assistant Attorney General, of counsel; Patrick DeAlmeida, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
*545 This pro se prisoner's appeal challenges the decision of the Department of Corrections (DOC) which refused to cooperate with his effort to artificially inseminate his wife. Appellant asserts a constitutional right to the procreation procedure despite his prisoner status. We disagree and affirm DOC's policy.
Appellant is age 45. He was sentenced for homicide in 1985 to a life term with a thirty-year term of parole ineligibility. The prison records show that his mandatory minimum sentence of thirty years expires on November 23, 2014, allowing for county jail time credits pretrial. Appellant claims that he will be eligible for parole in 2011, apparently relying on his anticipated commutation time and other institutional credits.
Appellant was married in 1986 while incarcerated in State Prison. His wife is age 36 and works as a bookkeeper in West Long Branch. She earns about $30,000 a year and has U.S. Healthcare medical benefits. The couple has one legal child, a daughter, now about age 15. Appellant's wife is self-supporting. She and the child receive no public assistance.
Appellant's wife has secured the assistance of a physician near her home for medical help with the artificial insemination procedure. Appellant's first request to artificially inseminate his wife was refused in 1988. He was turned down again by DOC in 1990. No appeal was taken from these denials.
On July 7, 1993 appellant applied once more to William H. Fauver, Commissioner of DOC, for approval and assistance in artificially inseminating his wife. Appellant requested DOC to "transport him to a nearby medical facility so that he could artificially inseminate his wife or provide him with a sterile plastic container in which to deposit his ejaculate so that his wife could swiftly transport the ejaculate outside the prison to a medical facility." He said that he and his wife would bear all cost for the procedure. He describes the proposed procedure in his brief:

*546 The procedure, as far as Mr. Percy is concerned, is even more simple. A fresh semen specimen should be collected and tested at the Robert Wood Johnson Medical School, University Center for Reproductive Endocrinology and Fertility, 303 George Street, Suite 250, New Brunswick, New Jersey 08901. It could be delivered there at any time of the day. If it is collected by Mrs. Percy and transported to the center, it must be there within one hour, no more than two hours. Upon completion of this procedure, Mr. Percy will be returned to the Trenton State Prison (Vroom Readjustment Unit), in Trenton, New Jersey 08628.
Once sperm is ejaculated into a jar, that sperm remains potent for a short period of only two hours. Within that time frame the sperm must be processed (frozen etc) at the medical facility.
As an alternative to appellant going to the medical school, his wife could pick up the sperm specimen at the prison and take it for insemination purposes.
This request was denied on August 27, 1993 by Thomas D. Farrell, Supervisor, Health Unit Services, with the concurrence of Commissioner Fauver. Farrell relied on the previous turndowns in 1990 by Jan Troy, Special Assistant to the Commissioner, and in 1988 by Gary Hilton, Assistant Commissioner. The DOC has consistently ruled that the procedure is simply not available to inmates. No specific DOC regulation covers the matter. As Gary Hilton said in 1988, "[i]nsemination is considered to be an elective medical procedure, and without a court order, is not permitted by our departmental regulations."
To our knowledge, no court in the land has upheld the constitutional right of an inmate to procreate through artificial insemination. One appellate court has squarely declined to recognize such a right. In Goodwin v. Turner, 908 F.2d 1395 (8th Cir.1990) (Judge McMillian dissenting), the court upheld the policy of the federal Bureau of Prisoners that "sound correctional policy dictates against allowing inmates to artificially inseminate another person." Id. at 1397. The Eighth Circuit concluded that "the Bureau's restriction on inmate procreation is reasonably related to furthering the legitimate penological interest of treating all inmates equally, to the extent possible." Id. at 1400. The federal Bureau of Prisoners had stressed the problems involved in extending the service to the entire inmate population, both male and female, and, of course, expressed concerns because of security and *547 limited available resources. Several trial-level courts have declined to recognize the right of an inmate to procreate. Anderson v. Vasquez, 827 F. Supp. 617, 620 (N.D.Cal. 1992), complaint dismissed without prejudice on ripeness grounds, 28 F.3d 104 (9th Cir.1994); Wool v. Hogan, 505 F. Supp. 928, 932 (D.Vt. 1981); see Southerland v. Thigpen, 784 F.2d 713, 718 (5th Cir.1986) (right to breast feed outweighed by legitimate penological goals of the state).
In Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64, 75 (1987), the federal Supreme Court upheld the fundamental right of a prisoner to marry and struck down a regulation barring inmate marriages except for "compelling reasons" and then only with the warden's permission, which permission was usually only given in the prospect of illegitimacy. Notably, in Turner v. Safley, supra, 482 U.S. at 96, 107 S.Ct. at 2265, 96 L.Ed.2d at 83, the Supreme Court declined to announce the right of prisoners to procreate as a fundamental right which trumped institutional concerns. The Court recognized a number of aspects of marriage which do survive custodial circumstances and justified inmate marriage: emotional and public commitment; religious or spiritual significance; consummation after release on parole or commutation; precondition to government benefits, like Social Security; property rights, and legitimation. The Supreme Court observed that: "these incidents of marriage, ..., are unaffected by the fact of confinement or the pursuit of legitimate corrections goals." Ibid. No mention was made of the right to procreate.
Appellant contends that the right to procreate has been consistently recognized as a fundamental right. See Carey v. Population Services Int'l, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675, 685 (1977); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972); Skinner v. Oklahoma, 316 U.S. 535, 536, 541, 62 S.Ct. 1110, 1111, 1113, 86 L.Ed. 1655, 1657 (1942). He urges that retention of this right is not inconsistent with his status as a prisoner. He asserts that no *548 valid penological goal justifies DOC's policy limiting this right. He also relies on Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3rd Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988), which held that a female inmate did not need to obtain a court-ordered or court-approved release in order to have a non-therapeutic, elective abortion and that female inmates have a right to public abortion funding. To the extent that the fundamental right to privacy and an abortion may have prevailed in Lanzaro, appellant has a colorable point that the right to procreate should enjoy equal stature with the right to abort a fetus. The Third Circuit's rationale does not aid appellant, however. That court observed that a woman choosing abortion "will impose no more, and indeed probably less, administrative and financial burdens on [prison] officials." Id. at 342. The Third Circuit also saw no ripple effects on fellow inmates and staff by recognizing the right to abortion in the custodial context. Id. at 343. To the extent that an elective abortion diminishes rather than increases administrative concerns in the overall, appellant's point loses luster.
The DOC urges that legitimate penological interests justify the agency's refusal to approve the procedure. Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). There are about 22,000 male and 1,000 female inmates presently in the State Prison system. DOC correctly observes that when a prison regulation limits an inmate's constitutional right, the limitation can survive if there is a "valid, rational connection" between the prison regulation and a legitimate governmental interest. Turner, supra, 482 U.S. at 89, 107 S.Ct. at 2262, 96 L.Ed.2d at 79 (quoting Block v. Rutherford, 468 U.S. 576, 586, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438, 447 (1984)). Considerable judicial deference to correction officials is appropriate because of the impact on guards, other inmates, prison security, and the already strained allocation of prison resources. Equal protection concerns exist as well. If female prisoners had the right to artificial insemination, the financial burdens and security concerns *549 would be quite significant inside the prison. Of course, social and economic concerns beyond the prison walls could also be considered, especially if procreation rights become available to long-term prisoners. Providing resources and accommodations for procreation to some inmates would likely reduce the availability of other desirable programs for all inmates. And, of course, any additional burden of services detracts from the twin missions of prison: custodial security and potential rehabilitation for the entire prison population.
We conclude that there are sufficient, valid penological concerns to justify the DOC's policy, even if appellant does have a fundamental right to procreate while serving a thirty-year sentence without parole. Security risks, scarce resources and equal protection concerns are legitimate reasons for courts to give deference to the judgment of the prison administration in this situation.
We accept the DOC's policy against inmate procreation by artificial insemination as a valid exercise of administrative expertise to which we owe considerable deference. We must overturn agency action which is arbitrary and capricious or violative of express or implicit legislative policies. Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Campbell v. Dept. of Civil Service, 39 N.J. 556, 562, 189 A.2d 712 (1963); Barone v. Dept. of Human Services, 210 N.J. Super. 276, 285, 509 A.2d 786 (App.Div. 1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987). We are satisfied on this record, albeit sparse, that legitimate penological concerns rationally support the DOC's restrictions on appellant's right to procreate by artificial insemination. DOC's policy against artificial insemination by inmates does not clash with any existing constitutional right yet articulated by our highest federal or State courts. Nor does the policy clash with any extant legislative policy.
Affirmed.