Brian E. LENTINI

v.

CITY OF KENNER et al.

Civ. A. No. 79–3621.

United States District Court,
E. D. Louisiana.

Oct. 16, 1979.

Arthur J. Lentini, Kenner, La., for Brian E. Lentini.

Hubert A. Vondenstein, Kenner, La., for City of Kenner.

Warren E. Mouledoux, Sr., New Orleans, La., for Honorable Paul J. Hardy, Secretary of State of the State of La.

MEMORANDUM OPINION

COLLINS, District Judge.

Plaintiff in this cause challenges the constitutionality of Section 2.05, Article II of

the Kenner City Charter.[1] Petitioner initially sought a temporary restraining order enjoining the Elections Department of the Secretary of State's Office, the City of Kenner, and other defendants, having ministerial duties associated with the upcoming October 27, 1979 primary,[2] from printing election ballots for the Kenner City Council, District 1 election without plaintiff's name thereon. In lieu of issuing a temporary restraining order, the Court and counsel for all parties[3] reached a joint stipulation[4] designed to preserve the status quo and safeguard plaintiff's right to have his name printed on election machine ballots. The joint stipulation was to remain binding on all parties until September 28, 1979. On that date the Court held[5] that Section 2.05, Article II of the Kenner City Charter was unconstitutional. The Court permanently enjoined the City of Kenner and the Honorable Paul J. Hardy, Secretary of State for the State of Louisiana, from printing or delivering election machine ballots for the Kenner City Council, District 1 election, without plaintiff's name thereon and from otherwise obstructing plaintiff's right to run for said City Councilman position.

Factually, there is no dispute between the parties.[6] Plaintiff moved to the City of Kenner on July 1, 1979, after completing construction of his home on a lot owned by plaintiff's family for over twenty-five years. On July 6, 1979, plaintiff became a

qualified elector in the City of Kenner, Council District 1. Unexpectedly, on August 1, 1979, the incumbent Councilman for District 1 resigned, with approximately three years remaining in his term, thus necessitating a special election. Presently there are eight candidates for the District 1 Councilman position. The probability is strong that a runoff election will be held on December 8, 1979. Therefore, by the time a candidate for the District 1 Councilman position takes office, plaintiff will have resided in the City of Kenner and District 1 for six months. In the joint stipulation of facts, the parties also appended census figures attesting to population growth in the City of Kenner. The Kenner population has increased 60% since 1972 and 31% since 1975.

Plaintiff qualified as a candidate for Kenner District 1 Councilman on August 22, 1979. Mr. Arthur Wise challenged plaintiff's qualifications in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, on the grounds that plaintiff was in violation of Section 2.05, Article II of the Kenner City Charter. The Twenty-Fourth Judicial District Court rejected plaintiff's constitutional attack on the durational residency statute and ordered that plaintiff's name be removed from all District 1 ballots.[7] On September 14, 1979, the Fourth Circuit Court of Appeals for the

---

1. Section 2.05, Article II of the Kenner City Charter provides:

A Councilman shall be a qualified elector of the City, and shall have been domiciled in the City for at least two (2) years immediately preceding his taking office. A District Councilman shall also have been domiciled in his respective district for at least one (1) year immediately preceding his taking office. If a Councilman removes his domicile from the City or from the district from which he was elected, or becomes convicted of a felony, or ceases to possess any of the other qualifications required by this Charter, he shall immediately become disqualified, creating a vacancy in the office.

2. See plaintiff's initial petition.

3. On September 24, 1979, the Court granted plaintiff's motion to dismiss the following defendants: the Honorable Edwin W. Edwards, Governor of the State of Louisiana; the Honor-

able William J. Guste, Attorney General, State of Louisiana; the Honorable Douglas Fowler, Custodian of Voting Machines, State of Louisiana; the Honorable William Justice, Clerk of Court, Parish of Jefferson; and the Board of Election Supervisors of the Parish of Jefferson. Plaintiff's motion to dismiss was granted, because it was apparent to the Court that future relief, if any, could have been effectuated by retaining as party defendants the City of Kenner and the Secretary of State for the State of Louisiana.

4. See Minute Entry of September 20, 1979, record p. 3.

5. See Order of September 28, 1979, record p. 9.

6. See Joint Stipulation of Facts, record p. 4.

7. Id.

State of Louisiana affirmed.[8] On September 18, 1979, the Supreme Court of Louisiana denied a writ of certiorari,[9] and on September 19, 1979, plaintiff filed this action for injunctive and declaratory relief. All parties agreed to consolidate the hearing on the preliminary injunction with the trial on the merits, pursuant to Rule 65(a)(2), F.R.Civ.P. Counsel also agreed to submit the cause on the briefs, with all parties waiving oral argument.[10]

Initially, the Court holds that jurisdiction is proper under 28 U.S.C. § 1343(3), 28 U.S.C. § 2201, and 42 U.S.C. § 1983. The Court also notes that no party has contested the issue of jurisdiction.

■ When presented with constitutional issues grounded upon alleged violations of the Fourteenth Amendment equal protection clause, the Court must first determine the appropriate standard of review. The Supreme Court has thus far identified three standards of review for legislation challenged under the equal protection clause: the mere rationality test, see *Day-Brite Lighting v. Missouri*, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952); an intermediate level of scrutiny,[11] see *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); and strict scrutiny, requiring that the classification be sustained by the showing of a compelling government interest, see *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Korematsu v. U. S.*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

■ The Supreme Court has also invoked strict scrutiny analysis when reviewing statutes which infringe on fundamental rights or fundamental interests. See *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16–39, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). These rights are deemed fundamental because they are explicitly or implicitly guaranteed in the Constitution. See *San Antonio, supra*, 411 U.S. at 33, 93 S.Ct. 1278. Presently the Supreme Court has used strict scrutiny analysis where legislative classifications infringe on the following fundamental rights: (1) equal access to the criminal justice system without regard to wealth, see *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); (2) right to privacy in procreation, see *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); (3) the right to unrestricted interstate travel, see *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941); and (4) the right to vote, see *Cipriano v. Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Court notes that the classification in this action has a potential impact on the two latter fundamental rights.

■ The Court holds that Section 2.05, Article II of the Kenner City Charter must satisfy the rigors of strict scrutiny review. Thus, the City of Kenner must demonstrate that a compelling governmental interest justifies classification of candidates based upon a two year durational residency requirement. Strict scrutiny analysis is proper in light of the Supreme Court's recent statements dealing with the direct effect that candidacy durational residency require-

---

8. See plaintiff's initial petition in the instant cause.

9. *Id.*

10. See Minute Entry, September 20, 1979, record p. 3.

11. L. Tribe, *American Constitutional Law* (1978), pp. 1063–66; G. Gunther, *Cases and Materials on Constitutional Law* (9th ed. 1975), pp. 682–90.

ments may have on the exercise of the Franchise:

> The initial and direct impact . . . is felt by aspirants for office, rather than voters, and the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review. However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. . . . In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters. *Bullock v. Carter, supra,* 405 U.S. at 142–43, 92 S.Ct. at 856 (citations and footnotes omitted).

The Court finds that because of the sustained and rapid population growth experienced by Kenner since 1972, the classification under review does create a realistic impact on the exercise of the franchise.[12] This impact occurs because a substantial number of people have recently moved to Kenner. These persons can not become City Council candidates until residing in Kenner for two years. The electorate is therefore denied the right to vote for a potential City Council candidate without regard for that candidate's other qualifications. The electorate's freedom of choice is unfortunately restricted by the impact this statute has on a new influx of Kenner residents.

Additionally, this Court quotes with approval the language of the Sixth Circuit Court of Appeals:

> The durational residency requirement at issue classifies . . . [Kenner] residents on the basis of recent travel. That classification alone requires that the requirement be strictly scrutinized because it operates to penalize the exercise of the basic constitutional right to travel. It is not material that the classification denies new residents something that is not a constitutional right, i. e., the right to become a candidate for public office. We see no reason to apply a lesser standard to the present case. *Green v. McKeon,* 468 F.2d 883, 884–85 (6th Cir. 1972) (citations omitted).

Hence because the Kenner classification fuses together infringements on the fundamental right of unrestricted interstate travel and the fundamental right to vote, the Court must employ strict scrutiny analysis.

 The City of Kenner asserts that three governmental interests are served by a durational residence requirement: (1) the statute insures that the candidate is familiar with his constituents; (2) it insures that the voters have been thoroughly exposed to the candidate; and (3) it prevents political carpetbagging.[13] These are important governmental interests. Nevertheless, these are not compelling governmental interests, and the classification sweeps too broadly.

> Statutes affecting constitutional rights must be drawn with "precision," and must be "tailored" to serve their legitimate objectives. And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally

---

**12.** Strict scrutiny analysis has also been invoked in the following cases involving candidate durational residency requirements: *Henderson v. Ft. Worth Indep. Sch. Dist.,* 526 F.2d 286, 290–92 (5th Cir. 1976); *Green v. McKeon,* 468 F.2d 883, 884 (6th Cir. 1972); *Mogk v. Detroit,* 335 F.Supp. 698 (E.D.Mich.1971); *Bolanowski v. Raich,* 330 F.Supp. 724 (E.D.Mich. 1971). *See also* 65 A.L.R.3d 1048, 1054–56:

> The trend of the most recent cases, at least at the time of this writing, is for the courts to invalidate local laws, but to uphold state constitutional provisions, which establish durational residency requirements for candidates.

Similarly, *the courts seem more disposed to invalidate durational residency requirements which deal with city, county, or municipal level offices,* and less disposed to invalidate such requirements which deal with state level offices, including state judgeships. The length of the required residence has frequently been a critical factor in the court's determination. (footnotes omitted) (emphasis added)

**13.** *See Defendant's Trial Memorandum* p. 6, record, document no. 8.

protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose "less drastic means." *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972) (citations omitted).

It can not be said that this classification is necessary to achieve a compelling state interest. The classification is not "tailored" to achieve the stated goal:

It permits a two year resident of . . . [Kenner] to hold public office regardless of his lack of knowledge of the governmental problems of the city. On the other hand, it excludes more recent arrivals who have had experience in local government elsewhere or who have made diligent efforts to become well acquainted with the municipality. *Green v. McKeon, supra*, 468 F.2d at 885.

Less restrictive methods exist in the electoral process itself to deal with Kenner's important, but not compelling, interest in preventing political carpetbagging:

It is a matter of common knowledge that those who seek public office go to considerable effort and expense to secure exposure, and it may be safely assumed that opponents in an election race will seek out and make known the shortcomings of their opposition and assert their own superior qualifications for a particular post. If a short sojourn in the community is considered to be a disqualification, the electorate may voice its sentiment at the ballot box. *Mogk v. Detroit*, 335 F.Supp. 698, 701 (E.D.Mich.1971).

The Court therefore holds that the interests urged by the City of Kenner, in support of Section 2.05, Article II of the Kenner City Charter, are important but not compelling governmental interests. Accordingly, the classification can not survive the strict scrutiny analysis which must be employed to test the constitutionality of a two year City Council candidate durational residency requirement.

The Court will and hereby does STRIKE Section 2.05, Article II of the Kenner City Charter as unconstitutional. The Court will therefore and hereby does ORDER that de-

fendants, the City of Kenner and the Secretary of State for the State of Louisiana, be and hereby are PERMANENTLY ENJOINED from:

(1) Printing or delivering election machine ballots without the name of Brian E. Lentini printed thereon as a candidate for Councilman, Kenner City Council, District 1, in the October 27, 1979 primary; or

(2) Otherwise obstructing, in any way, the right of Brian E. Lentini to run for said office.