Mr. Barry Lee Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT AUTHORIZING THE MARRIAGE OF ANY 2 INDIVIDUALS REGARDLESS OF SEX, COLOR, RACE OR RELIGION
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION REQUIRING THE COUNTY CLERKS TO ISSUE MARRIAGE LICENSES TO ANY 2 INDIVIDUALS REGARDLESS OF SEX, COLOR, RACE OR RELIGION WHICH SHALL ENTITLE THOSE INDIVIDUALS TO ALL THE BENEFITS OF MARRIAGE WITH EXCEPTION OF THOSE DIVORCED INDIVIDUALS WITH CHILDREN UNDER THE AGE OF CONSENT; REQUIRING THE STATE, AND ANY AGENCY AND/OR SUBDIVISION OF THE STATE THEREOF, TO ACCEPT THE VALIDITY OF ANY MARRIAGE LICENSE ISSUED TO ANY 2 INDIVIDUALS FROM ANOTHER STATE OR COUNTRY REGARDLESS OF SEX, COLOR, RACE OR RELIGION WITH EXCEPTION OF THOSE DIVORCED INDIVIDUALS WITH CHILDREN UNDER THE AGE OF CONSENT; NO COUNTY CLERK SHALL ISSUE A MARRIAGE LICENSE TO ANY DIVORCED INDIVIDUAL WITH CHILDREN UNDER THE AGE OF CONSENT; UNTIL, THOSE CHILDREN ARE OF CONSENTUAL [SIC] AGE; THE STATE, ANY AGENCY AND/OR SUBDIVISION OF THE STATE THEREOF, SHALL NOT ACCEPT THE VALIDITY OF ANY MARRIAGE LICENSE ISSUED BY ANOTHER STATE OR COUNTRY TO A DIVORCED INDIVIDUAL WITH CHILDREN UNDER THE AGE OF CONSENT; NO "BIRTH CONTROL" OF ANY KIND BY ANY NAME SHALL BE DISTRIBUTED WITH OR WITHOUT SALE WITHIN THE STATE; DEFINING "INDIVIDUAL" AS A PERSON OF ANY SEX, COLOR, RACE AND RELIGION; DEFINING" SEX" AS MALE OR FEMALE; DEFINING "MARRIAGE" AS THE STATE SANCTIONED CONTRACT OF ANY 2 INDIVIDUALS FOR ENTITLEMENT TO ALL THE BENEFITS OF MARRIAGE; DEFINING "CONSENTUAL [SIC] AGE" AS THE AGE IN WHICH AN INDIVIDUAL MAY ENTER INTO A LEGALLY BINDING CONTRACT; DEFINING "BIRTH CONTROL" AS ANY MAN MADE FORM OR PRODUCT TO PREVENT THE CONCEPTION OF LIFE OR TO CAUSE THE ABORTION OF LIFE; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS TO THE ENFORCEMENT OF THIS AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
1. Subsection (1)1 of your proposed amendment provides:
 Upon passage of this amendment the county clerks shall be required to issue a marriage license to any two (2) individuals of consentual [sic] age regardless of sex, color, race or religion which shall entitle those individuals to all the benefits of marriage with exception to a divorced individual with any child under the age of consent. . . .
Your use of the terms "consensual age" and "under the age of consent" is confusing. You define the term "consentual [sic] age" in subsection (2)1(d) as meaning "the age in which an individual may enter into a legally binding contract." Although this definition appears to track the Arkansas Code, which defines marriage as "a civil contract to which the consent of the parties capable in law of contracting is necessary," A.C.A § 9-11-101, a problem arises with respect to both definitions insofar as the Code recites various ages at which an individual is "capable in law of contracting."
Section 9-25-101 of the Code defines the age of majority for all purposes as 18, with the exception of the 21-year-old age limit applicable to the purchase and consumption of alcoholic beverages. However, specifically with respect to marriage, the Code provides that parties can contract to marry if they are both at least 18. However, an exception applies if the parents' consent, in which case the parties may contract to marry if the male partner is 17 or the female partner is between 16 and 18. A.C.A § 9-11-102. Moreover, the Code recognizes the validity of marriages between even younger individuals, declaring that such contractual unions are valid but "voidable." A.C.A §9-11-105.
With respect to other varieties of contracts, A.C.A § 23-47-509
provides that even a minor can enter into a loan contract with a bank "for the purpose of defraying the expenses of his higher education or for necessaries." Section 18-42-102 further authorizes a minor to contract for a period not to exceed a year with the consent of his parent or guardian or when he reaches the age of 15 if he has no parent or guardian. Section 9-26-104 further empowers a circuit court to "remove the disability" of a minor aged 16 or over, thus authorizing the minor to contract as an adult. Your proposed amendment fails to specify which, if any, of these exceptions to the general rule that one may contract upon reaching majority will apply.
Your use of the terms "age of consent" and "consentual [sic] age" in subsections (1)2, 3 and 4 of your proposed amendment is likewise confusing for the reasons just set forth.
I will further note that your proposed denial of the right to remarry to any divorced parent of a child "under the age of consent" would almost certainly be deemed to offend the due process clause of the United States Constitution. As the Supreme Court noted in Loving v. Virginia, 388 U.S. 1, 12 (1967): "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness." The Court has classified that right as "fundamental," meaning that a state may abridge it only by means narrowly tailored to serve a compelling state interest. Washington v. Glucksberg, 521 U.S. 702, 726 (1997) (declaring "personal decisions relating to marriage" among "certain fundamental rights" subject to substantive-due-process review); Turner v. Safley, 482 U.S. 78, 95
(1987). I strongly doubt that sparing a child the prospect of dealing with a step-parent — the only goal I can conceive you intended in including this provision — would qualify as serving any variety of state interest, much less a compelling one. This same objection applies to subsections (1)2, 3 and 4 of your proposed amendment.
2. Subsection (1)2 of your proposed amendment is confusing in that the reference to "(4) of this Section" should read "(3) of this Section," given that subsection (1)3 sets forth the proscription against marriage of divorced parents "with any child under the age of consent."
3. Subsection (1)3 of your proposed amendment provides:
 Upon passage of this amendment no county clerk shall issue a marriage license to a divorced individual with any child under the age of consent; until, that child or children are of consentual [sic] age.
In addition to the ambiguities discussed in section 1 above, this passage is confusing in that it provides no procedure whereby a county clerk will determine whether an applicant for a marriage license or his proposed spouse has been divorced and has a child under the age of consent. Your failure to address this issue is inconsistent with your representation in Section (3) that your proposed amendment will be self-executing. The provision declaring the proposed amendment self-executing conflicts with your representation in section (3) that "[t]he General Assembly shall be required to make all other laws to the enforcement of this Constitutional Amendment."
4. Subsection (1)4 of your proposed amendment provides:
 Upon passage of this amendment the State, and any agency and/or subdivision of the State thereof, shall not accept the validity of any marriage license issued by any other state or country to a divorced individual with any child under the age of consent.
In addition to the ambiguities discussed in section 1 above, this passage is confusing in that it provides no procedure whereby the state, its agencies or its political subdivisions will determine whether an applicant for a marriage license or his proposed spouse has been divorced. Your failure to address this issue is inconsistent with your representation in Section (3) that your proposed amendment will be self-executing.
5. Section (1)5 of your proposed amendment provides:
 No birth control of any kind by any name shall be distributed with or without sale within in [sic] the State.
This provision is ambiguous in that you fail to specify what the phrase "distributed with or without sale" denotes. Does this term refer only to such activities as commercial sale or free distribution of birth control devices to serve a purpose such as public health? Does it further extend to a simple exchange of birth control devices among friends or the provision of, say, a condom by one sexual partner to another?
I will further note that a court would almost certainly declare your proposed control over the practice of birth control a violation of the United States Constitution. In Washington v. Glucksberg, 521 U.S. 702,726 (1997), the Supreme Court reaffirmed what it described as its" substantive-due-process tradition of interpreting the Due Process Clause to protect certain fundamental rights and `personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education,'" further noting that "many of those rights and liberties `involv[e] the most intimate and personal choices a person may make in a lifetime.'" (Emphasis added; quoting Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833,851 (1992)). I can envision no compelling state interest that might be served by restricting access to birth control in Arkansas, and I further doubt that a court would interpret a vague and generalized ban on the "distribution" of birth control as narrowly tailored to serve whatever state interest you might attempt to persuade the court qualifies as" compelling." As the Court noted in Eisenstadt v. Baird,405 U.S. 438, 453-54 (1972):
If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. See Stanley v. Georgia,394 U.S. 557 (1969). See also Skinner v. Oklahoma, 316 U.S. 535 (1942); Jacobson v. Massachusetts, 197 U.S. 11, 29 (1905).
See also Griswold v. Connecticut, 381 U.S. 479 (1965) (holding that a ban on birth control violates the penumbral right of privacy implicit in the Fourteenth Amendment).
Finally, I must strongly object to the fact that you submitted section (1)5 of your proposed amendment in a revised version of a previous submission that this office was in the process of addressing when the revision arrived. As recently as March 5 of this year, in Opinion No.2004-062, I warned you against submitting revised versions of any given amendment while this office is in the process of responding to a previous version. Specifically, I objected to the fact that "the current submission to which this opinion responds has been submitted three different times within a few weeks, causing my office to have to try to analyze a constantly moving target." As I noted in my previous opinion, this unacceptable practice has become a habit with you, resulting in a significant waste of my staff's time and efforts.
6. As noted in section 1 above, subsection (2)1(d) of your proposal is ambiguous in defining "consentual [sic] age" to mean "the age in which an individual may enter into a legally binding contract."
7. Subsection (2)2 of your proposed amendment provides:
 All other words in this amendment shall be defined according to the statutes in such case made and provide, if any, and otherwise shall be defined according to the customs and usage of the people of Arkansas.
The phrase "statutes in such case made and provide, if any" is syntactically garbled to the point that I cannot divine its meaning. Do you mean to declare that current statutory definitions, if any, will apply? If so, will this be the case regardless of the context in which the definitions are offered? Or do you mean to declare that only definitions offered by the legislature pursuant to its charge "to make all other laws to the enforcement of this Constitutional Amendment" will apply?
8. Section (3) of your proposed amendment is confusing in that, on the one hand, you declare that the amendment will be self-executing while, on the other, you charge the legislature with the duty "to make all other laws to the enforcement of this Constitutional Amendment." By definition, a self-executing amendment is one whose immediate and complete effectiveness requires no legislative action.
In this regard, this office has advised you before in addressing previous submissions on other subjects that a self-executing amendment by definition cannot require legislative action as a condition of its enforcement. See, e.g., Ark. Op. Att'y Gen. No. 2000-121. In Opinion No. 2004-062, I further advised you to heed what we have said in the past when you make new submissions. I cannot and will not commit this office's limited resources to repeatedly telling you the same thing.
9. Generally, the text of your proposed amendment contains various misspellings and errors in punctuation, which you should identify and correct if you elect to resubmit it.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh